## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MALCOLM G. SCHAEFER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Number: 1:07CV 1550 (RJL)** |
| | ) | |
| **PETE GEREN,** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56 because there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law. In support of this motion, Defendant respectfully submits the attached memorandum of points and authorities, the Administrative Record filed contemporaneously with this motion, a statement of material facts not in genuine dispute, and a proposed order.

Respectfully submitted,

/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895
Attorneys for Defendant

Of Counsel:
CAPTAIN KEVIN MCCART
U.S. Army Legal Services Agency
Arlington, Virginia  22203-1837

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MALCOLM G. SCHAEFER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Number: 1:07CV 1550 (RJL)** |
| | ) | |
| **PETE GEREN,** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This memorandum supports Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. There is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law.

Plaintiff, a former United States Army officer, brings suit under the Administrative Procedure Act (APA), 5 U.S.C. § 701, et. seq. and the Federal Question Statute, 28 U.S.C. § 1331. He alleges that the Army Board for Correction of Military Records[1] (ABCMR) erred in denying his requests for the following: (1) to have his October 1, 2002 Department of Defense Form 214 (DD 214) declared null and void, removed from his Official Military Personnel File (OMPF), and replaced with a reissued September 14, 2001 DD 214 reflecting an honorable medical discharge; (2) to remove a General Officer Memorandum of Reprimand (GOMOR) from his Official Military Personnel File (OMPF); (3) to remove an Officer Evaluation Report (OER) from his OMPF; and (4) to remove all references to his resignation in lieu of trial by general

---

[1] The Army Board for Correction of Military Records is composed of civilians appointed by the Secretary of the Army, and has statutory authority to "correct any [Army] record" in order to "remove error or injustice." 10 U.S.C. § 1552(a).

court-martial.[2]  (Compl., at 49-51.)  Plaintiff argued before the ABCMR that he was entitled to this relief because Article 3(b) is unconstitutional and that his September 14, 2001 discharge could not be revoked without a court-martial conviction for fraud.  (AR 058-094).[3]

Defendant is entitled to judgment as a matter of law on Plaintiff's claims pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact.  Plaintiff has failed to demonstrate that the decision of ABCMR denying his request was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  Defendant's statement of material facts not in genuine dispute and the Administrative Record support this memorandum.

## STATEMENT OF FACTS

Defendant respectfully refers the Court to Defendant's Statement of Material Facts to Which There is No Genuine Dispute filed simultaneously herewith.

## STANDARD OF REVIEW

### I.    Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation.

---

[2] Plaintiff also requested monetary relief from the ABCMR, AR 047, but he is not seeking monetary relief from this Court.  (Compl., Prayer for Relief, ¶ m.)

[3] "AR" refers to the Administrative Record, followed by a page number truncated to three digits for ease of reference; i.e., Administrative Record page 00058 is cited as "AR 058."

Id. at 247.  The party moving for summary judgment need not prove the absence of an essential

element of the non-moving party's case.  Celotex, 477 U.S. at 325.  "[T]he burden on the moving

party may be discharged by 'showing' –  that is, pointing out to the district court –  that there is

an absence of evidence to support the non-moving party's case."  Id.  Once the moving party has

met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts

showing that a genuine issue exists for trial or present some objective evidence that would

enable the court to find an entitlement to relief.  Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986); Banks v. C & P Tel. Co., 802 F.2d 1416 (D.C. Cir.

1986).

       The mere existence of some factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact.  See Anderson, 477 U.S. at 247-48.  The "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is well-settled that

"there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a

jury to return a verdict for that party."  Anderson, 477 U.S. at 249-50.  If the evidence is merely

colorable, or is not significantly probative, or the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, summary judgment is proper.  See id. at

249-50; Matsushita, 475 U.S. at 587.  In Celotex, the Supreme Court further instructed that the

"[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327 (quoting Fed.

R. Civ. P. 1).

## II.    APA Standard

Congress has entrusted the primary duty of correcting military records with the military correction boards.  Harris v. United States, 14 Cl. Ct. 84, 89 (1987), 10 U.S.C. § 1552.  When a military member seeks to overturn the final decision of a military correction board, the court has a very limited scope of review.  Under the APA, the Court will overturn an agency decision only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); Wolfe v. Marsh, 835 F.2d 354, 358 (D.C. Cir. 1987).  "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (citing Orloff v. Willoughby, 345 U.S. 83, 94 (1953)).

An agency action is arbitrary and capricious if the agency has failed to follow procedure as required by law (5 U.S.C. §706(2)(D)), or has entirely failed to consider an important aspect of the problem.  See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983).  Review of the agency's decision is not de novo, it is limited to the administrative record that was before the agency.  See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985); McDougall v. Widnall, 20 F. Supp.2d 78, 82 (D.D.C. 1998) (citations omitted).

To prevail in this Court, the plaintiff must "overcome the 'strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'"  Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997) (citation omitted).  It is well-settled that to rebut this presumption, a plaintiff must establish through "cogent and clearly convincing evidence" that the Agency's findings were arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulations.  Wronke v.

Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citation omitted); McDougall, 20 F. Supp.2d at

82; Walker v. Shannon, 848 F. Supp. 250, 254 (D.D.C. 1994).  Only the most egregious agency

decisions do not satisfy this very deferential standard of review.  Kreis v. Sec'y of the Air Force,

866 F.2d 1508, 1515 (D.C. Cir. 1989).

      "[T]he function of this Court is not to serve as a super correction board that reweighs the

evidence." Charette v. Walker, 996 F. Supp 43, 50 (D.D.C. 1998).  In reviewing agency action

under the APA's arbitrary and capricious standard, a court "will not disturb the decision of an

agency that has 'examined the relevant data and articulated a satisfactory explanation for its

action including a rational connection between the facts found and the choice made.'" MD

Pharm., Inc. v. Drug Enforcement Admin., 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting Motor

Vehicle Mfrs. Ass'n., 463 U.S. at 43).  The requirement that an agency provide a rational

explanation for its action "does not mean that an agency's decision must be a model of analytic

precision to survive a challenge.  A reviewing court will 'uphold a decision of less than ideal

clarity if the agency's path may reasonably be discerned.'" Dickson v. Sec'y of Defense, 68

F.3d 1396, 1404 (D.C. Cir. 1995) (citation omitted).  Indeed, "while the broad grant of discretion

implicated here does not entirely foreclose review of the Secretary's action, the way in which the

statute frames the issue for review does substantially restrict the authority of the reviewing court

to upset the Secretary's determination." Kreis, 866 F.2d at 1514.

## ARGUMENT

      This Court has jurisdiction to review Plaintiff's claims pursuant to the Administrative

Procedure Act, 5 U.S.C. §§ 701-706.  Plaintiff's complaint repeats in great detail the allegations

made to and rejected by the ABCMR.  None of Plaintiff's claims, however, establish that the

ABCMR's decision was arbitrary or capricious.  Plaintiff attempts to convince this Court to substitute its judgment for that of the ABCMR. This Court should not do so.  Despite filing a nearly two hundred paragraph Complaint, the following is the sum total of Plaintiff's discussion of the ABCMR decision: "[t]he decision of the Secretary of the Army, acting through the Army Board for Correction of Military Records, not to correct the Plaintiff's military records as requested was, and is, arbitrary, capricious, lacks substantial evidence and is contrary to the evidence and law."  (Compl. ¶ 192.)

Plaintiff's failure to identify any specific deficiencies in the ABCMR decision is telling as the issue before this Court is not whether the Plaintiff's September 14, 2001 outprocessing was the product of an invalid discharge or a fraudulent discharge.  Nor should this Court be concerned with whether the Army had the authority to exert control over Plaintiff after September 14, 2001 or whether he should have received an adverse OER or a GOMOR.  The final agency action that is before this Court is the ABCMR's October 28, 2005 decision denying Plaintiff his requested relief.  The only issue before this Court is whether the ABCMR decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The administrative record conclusively establishes that the ABCMR correctly determined that Plaintiff's alleged discharge on September 14, 2001 was a legal nullity, that the Army's assertion of jurisdiction over him was proper, that Article 3(b), Uniform Code of Military Justice (UCMJ), is constitutional, and that Plaintiff is entitled to no relief.  Therefore, Defendant is entitled to summary judgment.

## I.  Plaintiff's September 14, 2001 DD 214 Was Ineffective

Plaintiff's claim that he was discharged on September 14, 2001, and thus his October 1, 2002 DD 214 is a nullity, is without merit. The ABCMR carefully considered Plaintiff's arguments in support of this claim before concluding, in a 41 page opinion, that the Army effectively and lawfully exerted jurisdiction over Plaintiff until October 1, 2002. (AR 002-042.) This Court need not reach the merits of the ABCMR's decision at all, because the authority to discharge Plaintiff was properly revoked from Fort Benning prior to September 14, 2001. In his extensive, memorandum-like Complaint, Plaintiff draws numerous unfounded and incorrect legal conclusions that he couches as facts.[4] Drawing on these "facts," Plaintiff claims that the U.S. Army Physical Disability Agency (USAPDA) did not have the authority to revoke the orders to discharge Plaintiff. (Compl. ¶¶ 68, 164.) As set out below, this conclusion is wrong. As Plaintiff was never effectively discharged from the Army, the Army retained jurisdiction over Plaintiff and had the authority to take all of the actions of which he complains.

Plaintiff spends a tremendous amount of time in his Complaint setting out his version of the Army Physical Disability Evaluation System (PDES). <u>See, e.g.</u>,(Comp. ¶¶ 17-30.) Plaintiff's oversimplified version of the system omits certain important details and does not accurately reflect the manner in which either of Plaintiff's PEBs were conducted.[5] Plaintiff's

---

[4] For example, in just two paragraphs in the Facts section of his Complaint, Plaintiff makes the following assertions, "Defendant violated the U.S. Constitution and federal laws and regulations . . . Defendant then erroneously discharged Plaintiff . . . The second discharge, dated October 1, 2002, is a legal nullity." (Compl. ¶¶ 7-8.) These are but three of the numerous legal conclusions masquerading as facts in Plaintiff's complaint.

[5] Plaintiff hinges his claim on his reading of Appendix E of Army Regulation 635-40. Plaintiff claims that only Army Personnel Command (PERSCOM) could return Plaintiff's case to the PEB for reconsideration. (Compl. ¶ 67.) Plaintiff again misses the mark. This ignores the fact that USAPDA is part of PERSCOM. (Bell Depo, pp. 17-18, (AR 00756).) The regulation states that requests for changes will be submitted to "PERSCOM (TAPC-PDB)." Army Regulation 635-40, Appendix E-9.e. TAPC-PDC is the shorthand notation for the Physical Disability Branch (PDB). (Bell Depo, pp. 17-18, (AR 00756).) This makes it clear that it is the

entire theory

of the case rests on his assertion that USAPDA did not and could not issue his orders because USAPDA is not an orders issuing authority.  (Compl. ¶ 36.)  Both Fort Benning and USAPDA personnel stated that it is USAPDA, through PDB, that has the authority to direct the issuance of discharge orders.  (See AR 138, 750, 757, 770, 772.)  While Fort Benning physically produces the discharge orders and the DD 214, it is powerless to do so without USAPDA approval.  (AR 110, 113, 123-24, 135, 772.)  The record conclusively establishes that USAPDA's removal of the separation code for Plaintiff in the personnel computer system deprived Fort Benning of the authority to discharge Plaintiff.  (AR 749-50, 770, 807-09.) Fort Benning's authority to discharge Plaintiff had been revoked at least one month before he presented himself to the transition point on September 14, 2001 to receive his invalid DD 214. (Id.)

The orders to discharge Plaintiff on September 14, 2001 were authorized by the Physical Disability Branch (PDB).  (AR 750, 757.)  It was also the PDB that later revoked the authorization for the discharge orders.  (AR 750, 762, 769-70, 772.)  The revocation was entered into the personnel computer system a full month in advance of September 14, 2001.  (AR 022, 040, 110, 113, 750, 770.)  Once the revocation was entered into the personnel system, the installation, Fort Benning, no longer had authority to discharge Plaintiff.  (AR 772.)  While Fort Benning actually issued the orders, it did not have the authority to approve a medical discharge for Plaintiff.  (AR 442, 772.)  Only the PDB had that authority.  (Id)  Once the PDB revoked the

PDB, a part of USAPDA, which is in turn a part of PERSCOM, that has the authority to make changes.  The paragraph goes on to say that "USAPDA will decide whether the case should be considered by the PEB."  Army Regulation 635-40, Appendix E-9.e.  While the regulation could be clearer, the Army and the ABCMR's interpretation of the regulation is reasonable and entitled to deference.  See Cargill v. Marsh, 902 F.2d 1006, 1008 (D.C. Cir. 1990) (discussing the heightened deference Congress intended the courts to accord Correction Board determinations under 10 U.S.C. § 1552 (a)).

authorization, Fort Benning lost the authority to discharge Plaintiff and so the DD 214 it issued was a legal nullity.

Plaintiff attempts to have the ABCMR, and now this Court, declare his September 14, 2001 discharge orders valid, but the revocation of those orders made the September 14 order invalid. Plaintiff purports to support a literal reading of the Army Regulation, but only insofar as it applies to the revocation of his orders. He does not support that same reading for the issuance of his initial discharge orders. The PDB both authorized and then revoked Plaintiff initial discharge orders. (AR 750, 762, 770, 772.) Plaintiff claims that because only PERSCOM, not PDB, has the authority to issue or revoke orders, PDB's revocation of his orders was without effect. (Compl. ¶¶ 58-59.) This conclusion ignores the fact that PDB is part of PERSCOM. (AR 757-58.) More importantly, indeed fatally for Plaintiff's claim, Plaintiff also ignores the fact that PDB also authorized the issue of his original discharge orders. (AR 750.) Thus, there are only two possible readings of the regulation, both of which lead to the conclusion that Plaintiff's discharge was ineffective. First, if, as Plaintiff asserts, the PDB does not have the power to authorize disability separations, then his original discharge orders, issued on the PDB's authority, were null and void. Void orders cannot provide the necessary authority to discharge someone. See U.S. v. Williams, 53 M.J. 316 (C.A.A.F. 2000); U.S. v. Garvin, 26 M.J. 194 (C.M.A. 1988). Therefore, following this interpretation, Plaintiff was never discharged because his discharge was based on unauthorized, ultra vires orders. Second, if, as the evidence supports, the PDB had the authority to issue the discharge orders, then PDB also had the authority to cancel or revoke those orders. Since the same office, its personnel, and its procedures were used to authorize both the initial discharge orders and the revocation orders, Plaintiff cannot argue that only the revocation orders were void while also maintaining that the initial discharge orders

9

were valid, since both were issued by the Fort Benning Transition Center as a direct result of authorization given by PDB.  Either both sets of orders were valid or both sets of orders were invalid.  Under one scenario, Plaintiff's discharge orders were invalid from the time they were issued, as were the revocation orders.  Under the other scenario, the revocation orders were as valid as the discharge orders and so the former effectively canceled the latter.  The end result is the same under either scenario - Plaintiff remained on active duty in the Army after September 14, 2001.

The Fort Benning Transition Center recognized that both the authorization and the revocation were valid.  (AR 135-38, 442.)  The PDB timely communicated the revocation of Plaintiff's orders to the Fort Benning Transition center via computer by mid-August 2001.  (AR 749-50.)  The only reason the Transition Center did not issue hard copy revocation orders before September 14, 2001 was due to its internal administrative error.  (AR 113.)  Therefore, even though Plaintiff was issued a hard copy DD 214 on September 14, 2001, this document was without legal effect because the authority to do so had been revoked by PDB prior to that date. A DD 214 issued after authorization has been revoked is invalid, and the Army consequently retains jurisdiction over the service member in question.  See Williams, 53 M.J. 316 (A valid legal hold placed on a soldier just hours before effective time and date of DD 214 properly rescinded the separation.); Garvin, 26 M.J. 194 (DD 214 is without legal effect when mistakenly delivered by subordinate personnel after the discharge authority timely revoked the separation).[6]

_____

[6] Throughout his discussion of the PDES process, Plaintiff portrays his arguments as merely attempting to enforce the Army regulations.  He claims that the second PEB was void *ab initio* because USAPDA did not have the authority to request the reconsideration.  (Compl., ¶ 66.)  As demonstrated above, USAPDA did have the authority to request the reconsideration through the PDB.  The record reveals, however, that the first PEB might very well have been void *ab initio*.  Army Regulation 600-60, ¶ 3-2.b(1)(e) requires that Military Occupational

Although the facts and law set out above make it unnecessary to review the merits of the ABCMR decision, the ABCMR reached the above conclusion. (AR 040.)  The ABCMR concluded that the DD 214 issued to Plaintiff on September 14, 2001 was

> without legal effect because the authority to issue it had been revoked well before that date, by or before 14 August 2001.  Although counsel has in effect argued that a hard copy revocation order was absolutely necessary to revoke the separation orders, this is incorrect - either a verbal or hard copy order is sufficient as long as it accurately reflects the intent of the individual or agency that holds the authority to revoke the separation. (Id.)

This conclusion is consistent with Army regulation, practice, and the evidence in front of the ABCMR, as set out above.  Plaintiff "was not harmed in any reliance he may have placed on the regulation, as the first PEB finding never went to PERSCOM, and so the requirement for PERSCOM to authorize reconsideration was not triggered, contrary to [Plaintiff's] claim."  (AR 038.)  The ABCMR "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  Motor Vehicle Mfrs. Ass'n., 463 U.S. at 43.

## II.  The ABCMR Correctly Determined That Article 3(b), UCMJ, Is Constitutional Both

---

Specialty/ Medical Retention Boards (MMRBs) that consider the case of Judge Advocate General's Corps (JAG) officers must have a JAG officer board member.  Plaintiff's board did not have a JAG member.  (Brower Depo, pp. 11-12, 21, (AR 765).)  The MMRB is the board that referred Plaintiff into the PDES.  It is clear from the facts, that his referral was procedurally flawed, and, therefore, invalid.  Thus, the first PEB was void *ab initio* and Plaintiff was never properly discharged from the Army.  The Middle District of Georgia reached this same conclusion in the earlier litigation between the parties.  Schaefer v. White, 174 F.Supp.2d 1374, 1382 n.15 (M.D. Ga. 2001).

on its Face and as Applied to Plaintiff[7]

### A.  Article 3(b), UCMJ, Is Constitutional on its Face

Article 3(b) of the UCMJ provides that "each person discharged from the armed forces who is later charged with having fraudulently obtained his discharge is . . . subject to trial by court-martial on that charge and is after apprehension subject to this chapter while in the custody of the armed forces for that trial." 10 U.S.C. § 803 (b).  Plaintiff alleges that Article 3(b) is unconstitutional because "in order to exercise jurisdiction over Plaintiff, a court-martial must necessarily presume he is a serviceman. . . .However, he would only be a servicemen if he is guilty of the vert offense for which the Army wishes to try him." (AR 090.)  The ABCMR considered Plaintiff's claim that Article 3(b) is unconstitutional on its face and rejected it on its merits.  In doing so, the ABCMR noted that its conclusion was consistent with case law from the United States Court of Appeals for the Armed Forces (CAAF) and the decision of the U.S. District Court for Middle District of Georgia denying Plaintiff's request for a Temporary Restraining Order and Preliminary Injunction precluding his return to Army control.  (AR 042.)  Courts that have considered the constitutionality of Article 3(b) have uniformly found it constitutional.  See, e.g. Wickham v. Hall, 706 F.2d 713 (5th Cir. 1983); U.S. v. Reid, 46 M.J. 236 (C.A.A.F. 1997); U.S. v. Cole, 24 M.J. 18 (C.M.A. 1987); Wickham v. Hall, 12 M.J. 145 (C.M.A. 1981).  Despite devoting 20 pages of his ABCMR application to his argument that Article 3(b) is unconstitutional, Plaintiff was unable to provide citation to a single case in any

---

[7] Plaintiff raises for the first time in this suit a contention that Articles 32 and 34, UCMJ, are also unconstitutional as applied to him.  (Compl. ¶¶ 140-56.)  Plaintiff did not raise this claim to the ABCMR.  (AR 043-095.)  Plaintiff cannot raise an issue to a reviewing court if he failed to raise it first before the ABCMR.  Doyle v. U.S., 599 F.2d 984, 1000 (Ct. Cl. 1979), cert. denied 446 U.S. 982 (1980). Nonetheless, his argument that Article 3(b) is unconstitutional as applied to him is equally without merit. See Section II.B infra.

court that had reached his proposed conclusion. (AR 075-094.) The Fifth Circuit's decision in Wickham persuasively addresses and defeats Plaintiff's contentions regarding the unconstitutionality of Article 3(b). The Fifth Circuit addressed the constitutionality of Article 3(b) in light of the framework established by the Supreme Court in U.S. ex rel Toth v. Quarles, 350 U.S. 11, 23 (1955). Consistent with the earlier Court of Military Appeals decision, Wickham v. Hall, 12 M.J. 145 (C.M.A. 1981), the Fifth Circuit found that Article 3(b) was consistent with all of the factors enumerated in Toth, and, therefore, constitutional. Wickham, 706 F.2d 713.

In his Complaint, Plaintiff attempts to distinguish his case from the Wickham decision. (Compl. ¶ 138.) His attempts to paint himself as outside the scope of the Wickham holding are unpersuasive. Plaintiff avers in his Complaint that the holding in Wickham somehow centered on the fact that the Wickham plaintiff had a remaining reserve obligation. (Compl. ¶ 138.) This is incorrect. The Fifth Circuit framed the issue presented as "whether Article 3(b) may constitutionally confer court-martial jurisdiction over a person who has received a discharge that is later challenged by the issuing service on the ground it was fraudulently procured." Wickham, 706 F.2d at 715. This is the issue that the Court answered affirmatively after examining it in light of Toth and noting as well that this was "not a recent expansion of military court jurisdiction, but a doctrine which has persevered since at least the Civil War." Id. at 716 & n.2. The Fifth Circuit held that Article 3(b) was constitutional before ever mentioning the issue of the Wickham plaintiff's reserve obligation. Id. at 718. The mention of her reserve obligation was confined to the penultimate paragraph of the decision. Id. It is clear from the discussion that this was not the basis of the decision but merely offered as a permissible alternate basis of jurisdiction. Id.

This is not the first court to which Plaintiff has challenged the constitutionality of Article 3(b).  The U.S. District Court for the Middle District of Georgia rejected Plaintiff's facial challenge to Article 3(b) when he attempted to enjoin the Army's continued jurisdiction over him.  Schaefer v. White, 174 F. Supp. 2d 1374 (M.D. Ga. 2001).  "The Court declines to follow Plaintiff's request to find Article 3(b) unconstitutional and will not declare Plaintiff to be immune from its reach."  Id. at 1384.  CAAF also rejected Plaintiff's facial challenge to Article 3(b).  (Compl. ¶ 80); U.S. v. Schaefer, 56 M.J. 323 (C.A.A.F. 2002).  The decision of the ABCMR that is consistent with these decisions as well as the Fifth Circuit's analysis in Wickham cannot be said to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  As this Court is reviewing the ABCMR decision, this should end the inquiry.

**B.  Article 3(b) is Constitutional as Applied to Plaintiff**

Plaintiff's claim that Article 3(b) is unconstitutional as applied to him is equally without merit.  Plaintiff's argument has two prongs.  Plaintiff claims that Article 3(b) is unconstitutional as applied to him because: (1) he is a "full fledged civilian," (Compl. ¶ 138) and (2) because the Article 32 investigating officer concluded that there was no probable cause. (Compl. ¶ 39.)  Plaintiff's arguments are really recycled versions of his failed facial attack on Article 3(b).  Plaintiff's contention that Article 3(b) is unconstitutional as applied to him is grounded on an incorrect reading of the Wickham case, as set out above.   Article 3(b)'s constitutionality does not hinge on whether the person being brought to trial has a remaining reserve obligation.  This argument was properly rejected by the Middle District of Georgia, the Court of Appeals for the Armed Forces, and the ABCMR.

Plaintiff's argument that Article 3(b) is unconstitutional as applied to him because the

Article 32 investigating officer concluded there was no probable cause is equally flawed. Plaintiff's comparison of an Article 32 hearing to a grand jury investigation is inaccurate. While both Article 32 hearings and grand jury investigations are pretrial hearings, they have vastly different procedures that serve unique purposes. An Article 32 hearing is an adversarial proceeding designed to develop the evidence surrounding the alleged crime and to serve as a discovery mechanism for the accused Soldier. Rule for Court Martial (RCM) 405. Furthermore, the Article 32 hearing is but one layer of the procedural due process afforded an accused soldier. Pursuant to Article 34, UCMJ, and RCM 406, a charge may not be referred to trial by a general court-martial unless the convening authority's senior attorney advises him of the following: (1) whether each charge alleges an offense (form of the charge), (2) whether the charge is warranted by the evidence developed at the Article 32 investigation (substance of the charge), (3) whether a court-martial has jurisdiction over the accused and the offense, and (4) his recommendation as to the action to be taken by the convening authority. RCM 406. Once the convening authority has received this advice, he must then exercise his independent judgment as to how to dispose of the charge. RCM 407. In Plaintiff's case, these procedural steps were properly accomplished. (Compl. ¶ 94), (AR 219.) The convening authority's legal advisor concluded that the charge was in the proper form, it was warranted by the evidence, there was jurisdiction over Plaintiff, and he recommended trial by general court-martial. (AR 219.) The convening authority agreed and referred the case to trial. (Id.)

Appellant is essentially challenging a convening authority's right to convene a court-martial when the Article 32 investigating officer recommends against referring the charges to court-martial. It is clear beyond cavil that a convening authority is not bound by a

recommendation from the investigating officer to dismiss a case or to take some lesser action.[8]

See, e.g., U.S. v. Urbina, 14 M.J. 962, 966 (A.C.M.R. 1982). While Plaintiff argues that this

means there is no gate keeper between civilians and military prosecution, he mischaracterizes the

system. There is a gate keeper, and that gate keeper is the convening authority who decides

whether or not the case should go to trial after reviewing the Article 32 investigation record, the

investigating officer's report and recommendation, and the recommendation of his legal advisor.

The ABCMR's decision that Article 3(b), UCMJ, is constitutional as applied to Plaintiff is not

"arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" and is

consistent with long-standing precedent and the decisions of both the Army Court of Criminal

Appeals and CAAF who rejected Plaintiff's Petitions for Writs of Habeas Corpus. (See Compl.

¶¶ 88, 90-91, 100, 102-04.)

**III.  Conviction by Court-Martial is Not Required to Invalidate a Fraudulent Discharge**

Plaintiff's Complaint presumes, without support, that the only way for the Army to

invalidate a discharge when there is evidence of fraud is to obtain a conviction for fraudulent

discharge. Contrary to Plaintiff's arguments, no conviction is necessary to revoke a discharge

where there is "evidence of fraud or obvious error."  See Army Regulation 600-8-105, ¶ 2-21.e.

Pursuant to Army Regulation 600-8-105, the Army may administratively revoke discharge

orders after their effective date when there is evidence of fraud or obvious error or the revocation

---

[8] "If the convening authority finds or is advised by a judge advocate that there are
reasonable grounds to believe that an offense triable by a court-martial has been committed and
that the accused committed it, and that the specification alleges an offense, the convening
authority may refer it. . . . The convening authority or judge advocate may consider information
from any source and shall not be limited to the information reviewed by any previous authority .
. . ." RCM 601(d)(1).

is a written confirmation of verbal orders issued before the effective date of the discharge.  Id.
All three of these separate and distinct bases for invalidating a discharge are present in this case.
There was evidence of fraud, it was obvious error for Fort Benning to issue Plaintiff a DD 214
when the authority to do so had been revoked at least a month in advance, and the discharge
orders had been verbally revoked by PDB in conversations with Fort Benning.  This Court has
previously held that a court-martial conviction is not necessary to revoke a discharge as long as
there is an administrative allegation of  fraud. Rooney v. Sec'y of the Army, 293 F. Supp.2d 111,
127 (D.D.C. 2003), vacated on other grounds, 405 F.3d 1029 (D.C. Cir. 2005) ("a discharge
order may be revoked administratively where there is evidence that it was obtained under
fraudulent circumstances.").  As the Rooney decision makes clear, a conviction for fraudulent
discharge is only necessary if the Army wants to court-martial the soldier for additional offenses
committed by the soldier prior to his fraudulent discharge.  See U.S. v. Reid, 46 M.J. 236, 238
(C.A.A.F. 1997).

        Plaintiff states in his Complaint that Defendant "tried to convict Plaintiff" of fraudulent
discharge but "failed to convict [him]."  (Compl. ¶ 163.)  He then argues that "[i]f the
Government tries but fails to convict a dischargee of a violation of Article 83, then the
Government has tried but failed to void the discharge, and, in that case, the discharge stands and
the dischargee remains a civilian." (Id.) Plaintiff's claim that the government tried to convict
Plaintiff but failed to do so is false and a complete mis-characterization of the facts of this case.
The Army never tried Plaintiff.  Plaintiff was charged with fraudulent discharge, but, prior to
trial, Plaintiff voluntarily submitted a resignation in lieu of trial by court-martial.  (AR 733.)
When Plaintiff's resignation was approved, pursuant to the plea-agreement, the Army dismissed

the charge against Plaintiff and discharged him pursuant to Army Regulations.  (AR 1014.)

Plaintiff's attempt to portray his plea bargain for a voluntary discharge from the Army in lieu of

court-martial as an acquittal is beyond disingenuous.  Plaintiff requested that he be discharged

pursuant to Army Regulations with no worse than a General Discharge instead of defending

himself at court-martial.  (AR 733.)  By so doing, he waived any burden on the Army to establish

the fraudulent nature of his discharge at a court-martial; a burden the Army was prepared to

meet.  To come before this Court and claim that this plea bargain is the functional equivalent of

an acquittal is inaccurate and belies the fact that Plaintiff is the one who sought the alternate

disposition of the charge against him in order to avoid the pending trial by court-martial.

## IV.  The ABCMR Properly Denied Plaintiff Relief on His Remaining Claims

Plaintiff's challenges to the documents filed in his OMPF are all premised on the

allegation that the Army irrevocably lost jurisdiction over him on September 14, 2001.  As

established above, this allegation is baseless.  As the Army had jurisdiction over Plaintiff until

his discharge in lieu of court-martial on October 1, 2002, he cannot sustain his challenge to the

ABCMR's decision not to grant him relief in the form of expunging items from his OMPF or

substituting his invalid September 14, 2001 DD 214 for the correct October 1, 2002 DD 214 that

is currently in his records.

The ABCMR properly concluded that there was no conflict of interest in the preparation

of Plaintiff's OER.  (AR 041.)  Plaintiff's OER reflects that he was only evaluated for six months

of the time period listed on the OER.  (AR 222.)  A reading of Plaintiff's OER makes it clear that

he was evaluated for his performance as a Legal Assistance Attorney and not as a Trial Defense

Attorney as he erroneously claims in his Complaint.  (AR 222-23); (Compl. ¶ 187.d.)  Plaintiff's

18

allegations to the contrary are meritless.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests this Court dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

/s
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895
Attorneys for Defendant

Of Counsel:
CAPTAIN KEVIN MCCART
U.S. Army Legal Services Agency
Arlington, Virginia  22203-1837

19

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MALCOLM G. SCHAEFER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 1:07CV 1550 (RJL) |
| | ) | |
| PETE GEREN, | ) | |
| Secretary of the Army, | ) | |
| | ) | |
| Defendant. | ) | |
|  | ) | |

DEFENDANT'S STATEMENT OF MATERIAL FACTS
WHICH ARE NOT IN GENUINE DISPUTE

Pursuant to LCvR 7(h) and in support of Defendant's Motion for Summary Judgment, Defendant respectfully submits this statement of material facts as to which there are no genuine disputes.

1. Upon his graduation from West Point, Plaintiff was commissioned a Second Lieutenant in the Army.  (Compl. ¶ 5.)

2. On September 20, 2000, a Military Occupational Specialty/ Medical Retention Board (MMRB) evaluated Plaintiff's medical fitness.  (AR 492.)  The MMRB did not have a Judge Advocate member.  Schaefer v. White, 174 F.Supp.2d 1374, 1382 n.15 (M.D. Ga. 2001).  The MMRB referred Plaintiff to the Physical Disability Evaluation System.  (AR 492.)

3. A Medical Evaluation Board (MEB) considered Plaintiff's physical condition on May 29, 2001.  (AR 496-500.)  The MEB recommended that Plaintiff be referred to a Physical Evaluation Board (PEB).  (AR 500.)

4. On June 11, 2001, a Physical Evaluation Board (PEB) determined that Plaintiff was medically unfit and should be separated from the Army with zero percent disability.  (AR 513.)

Plaintiff was advised of the PEB's determination on June 13, 2001. ( AR 097.)  Following PEB

processing, Army Physical Disability Branch (PDB) authorized Fort Benning to issue discharge

orders to the Plaintiff.  (AR 750.)

5.  On July 2, 2001, the Fort Benning Transition Office issued discharge orders to

Plaintiff with an effective date of September 14, 2001.  (AR 098-99.)

6.  On August 2, 2001, PDB took action to revoke the authorization to discharge Plaintiff.

(AR 770.)  By August 14, 2001, PDB had transmitted the revocation of discharge authority to

Fort Benning by telephone, facsimile, and by computer system.  (AR 136, 750, 770.)  The

computer code authorizing Plaintiff's discharge was removed by USAPDA on August 14, 2001.

(AR 749-50.)

7.  On August 10, 2001, at the request of the Army Physical Disability Agency

(USAPDA), the officer in charge of JAG Corps assignments provided input as to Plaintiff's past

performance and his ability to continue to serve as an active duty Judge Advocate.  (AR 768,

819-20.)  The input was that Plaintiff was capable of continued service in the JAG Corps.  (AR

819-20.)

8.  After reviewing the JAG Corps input and after determining there were procedural

errors in the processing of Plaintiff's case, USAPDA contacted the PEB to determine if they

would like to reconsider the case.  (AR 769.)  The PEB decided to reconsider Plaintiff's case.

(Id.)  On August 30, 2001, the PEB determined that Plaintiff was fit for continued active duty.

(AR 817.)

9.  On September 5, 2001, Plaintiff was advised that the PEB had found him fit for duty.

(AR 818.)

10.  On September 13, 2001, Plaintiff ordered his subordinates not to come to work on

September 14, 2001 because Fort Benning was only requiring essential personnel to come to work in the wake of the September 11, 2001 terrorist attacks. (AR 815.) Plaintiff also called the head of the Transition Office to ensure that there would be someone present at the Fort Benning Transition Office to outprocess him on September 14, 2001. (AR 442.)

11. Plaintiff was outprocessed from Fort Benning on September 14, 2001. (Compl. ¶ 50; AR 812.) A clerk at the Fort Benning Transition Center reentered into the personnel computer system the code authorizing separation that had been previously removed by USAPDA. (AR 135, 749.)

12. Plaintiff's orders were revoked in writing by Fort Benning on September 18, 2001. (AR 104.)

13. Between September 20, 2001 and October 18, 2001, an investigation was conducted into Plaintiff's outprocessing. (AR 013-017.) The investigation concluded that Plaintiff had committed the offense of fraudulent separation. (AR 016.)

14. On October 29, 2001, Plaintiff was informed by a senior commissioned officer that an investigation had revealed that his separation was invalid and that he was still on active duty. (AR 105.) In the same letter, Plaintiff was ordered to report for duty at Fort Benning on November 5, 2001. (Id.)

15. A charge of fraudulent separation, in violation of Article 83, UCMJ, was preferred against Plaintiff on November 1, 2001 and amended on December 7, 2001. (AR 105-06; Compl. ¶¶ 73, 81.)

16. On November 1, 2001, Plaintiff filed a Complaint for Declaratory and Injunctive Relief as well as a Motion for Temporary Restraining Order and Preliminary Injunction in the District Court for the Middle District of Georgia asking the Court to restrain and enjoin the

22

Secretary of the Army from ordering him to active duty and requesting declaratory judgment that Plaintiff was a civilian and not subject to military control.  Schaefer v. White, 174 F. Supp.2d 1374 (M.D.Ga. 2001).

17.  On November 14, 2001, the District Court denied Plaintiff's Motion, ordered him to report for duty, and found that Article 3(b), UCMJ, was constitutional.  Id.

18.  On December 6, 2001, Plaintiff filed a Petition for a Writ of Habeas Corpus with the United States Court of Appeals for the Armed Forces (CAAF).  (Compl. ¶ 80.)  On January 18, 2002, CAAF denied Plaintiff's Petition.  (Compl. ¶ 87.)

19.  On January 24, 2002, Plaintiff filed a Petition for a Writ of Habeas Corpus in the Army Court of Criminal Appeals (ACCA).  (Compl. ¶ 88.)  On February 15, 2002, ACCA denied Plaintiff's Petition.  (Compl. ¶ 91.)

20.  On February 4, 2002, the Article 32 investigating officer issued his report.  (AR 734.)  The report found that while the evidence established that Plaintiff committed the offenses of Conduct Unbecoming an Officer and Gentleman and Dereliction of Duty, there was not probable cause to believe he had committed the offense of Fraudulent Separation.  (AR 741.)  The investigating officer recommended that the charge be dismissed. ( Id.)

21.  On March 1, 2002, the Commanding General,  U.S. Army Military District of Washington referred the charge against Plaintiff for trial by general court-martial. (AR 219.)

23.  On May 7, 2002, Plaintiff filed a Petition for a Writ of Habeas Corpus in CAAF. (Compl. ¶ 100.)  On May 24, 2002, Plaintiff filed a "Petition for Extraordinary Relief, Writ of Prohibition and for a Stay of Proceedings" in CAAF.  (Compl. ¶ 102.)  On May 31, 2002, CAAF denied Plaintiff's Petition for a Writ of Habeas Corpus.  (Compl. ¶ 103.)  On June 18, 2002, CAAF denied Plaintiff's "Petition for Extraordinary Relief, Writ of Prohibition and for a Stay of

Proceedings." (Compl. ¶ 104.)

24.  On May 27, 2002, Plaintiff submitted a voluntary Resignation for the Good of the Service in lieu of trial by general court-martial.  (AR 733.)  Plaintiff stated that he did not desire to appear before a court-martial, that he had not been coerced into submitting the resignation, and that he had been advised by both his military and civilian defense counsels of and fully understood the implications of submitting the resignation. (Id.)

25.  On June 3, 2002, the Commanding General, U.S. Army Military District of Washington recommended that Plaintiff's Resignation be approved.  (AR 029, 732.)

26.  On June 3, 2002, the Commanding General, U.S. Army Military District of Washington issued Plaintiff a General Officer Memorandum of Reprimand (GOMOR).  (AR 390-91.)  Plaintiff was given seven days to provide rebuttal matters to the Commanding General. (Id.)  On June 19, 2002, the Commanding General directed that the GOMOR be filed in Plaintiff's Official Military Personnel File. (AR 031, 392.)

27.  On July 19, 2002, the Deputy Assistant Secretary of the Army (Review Boards Agency) approved Plaintiff's resignation in lieu of courts-martial with a General discharge.  (AR 033.)  The Deputy Assistant Secretary directed that action be taken to recoup any unearned monies paid to Plaintiff. (Id.)

28.  Plaintiff was issued an adverse Officer Evaluation Report (OER) for the time period ending May 3, 2002.  (AR 222-23.)

29.  Plaintiff was discharged on October 1, 2002, in lieu of trial by court-martial.  (AR 033.)

30.  Plaintiff applied to the Army Board for Correction of Military Records (ABCMR) on September 8, 2004.  (AR 043.)  He requested that the following be expunged from his records:

(1) the October 1, 2002 DD 214, (2) his GOMOR, (3) his adverse OER, and (4) all references to his resignation in lieu of court-martial.  (AR 047.)  He also requested that he be issued a DD 214 dated September 14, 2001 showing "Medical discharge" as the reason for separation, that all efforts to recoup money from him cease, and that all monies already recouped from him be returned.  Id.  Plaintiff amended his application on December 30, 2004 and again on April 27, 2005.  (AR 003.)

    31.  On October 28, 2005, in a 41 page opinion, the ABCMR denied Plaintiff's request for relief. (AR 002-042.)

    32.  Plaintiff filed suit in this Court on August 30, 2007.  (Compl.)

Respectfully submitted,


/s                                      
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s                                      
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s                                      
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895
Attorneys for Defendant


Of Counsel:
CAPTAIN KEVIN MCCART
U.S. Army Legal Services Agency
Arlington, Virginia  22203-1837

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MALCOLM G. SCHAEFER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Number: 1:07CV 1550 (RJL)** |
| | ) | |
| **PETE GEREN,** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**<u>ORDER</u>**

      This matter comes before the Court on Defendant's Motion for Summary Judgment.

Based upon the motion, the opposition thereto, and the entire record herein, it is this _____ day

of _____, 20___ hereby

      ORDERED that Defendant's motion is GRANTED, and it is further

      ORDERED that judgment shall be entered for Defendant, and that this matter is

hereby DISMISSED WITH PREJUDICE.

      This is a final, appealable order.

SO ORDERED.


                                  _____
                                   RICHARD J. LEON.
                                   United States District Judge

Copies to:
Parties via ECF