UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MALCOLM G. SCHAEFER, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>THE HONORABLE PETE GEREN, )<br>SECRETARY OF THE ARMY, )<br>)<br>    Defendant. ) | Civil Action No. 1:07-cv-01550 (RJL) |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE
AND PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTIONS TO SUPPLEMENT THE ADMINISTRATIVE RECORD

*Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motions to Supplement the Administrative Record*

I. LEGAL STANDARDS FOR A FULL ADMINISTRATIVE RECORD UNDER SECTION 706 OF THE APA

<u>The threshold issue in this case is whether Plaintiff's initial separation on September 14, 2001, was final ("discharge #1"). If it was, nothing that followed matters because Plaintiff no longer was subject to the control of the United States Army.</u> One of Defendant's leading positions is that Plaintiff waived all claims for relief by voluntarily separating, through what Defendant analogizes to plea bargaining, on October 1, 2002, more than a year after discharge #1 ("discharge #2"). Yet, Defendant omitted from the record hundreds of pages that show Plaintiff preserved his objection to the Army's jurisdiction at all times after discharge #1.[1] An agency may not skew the record in its favor by excluding pertinent but unfavorable information. *Envtl. Def. Fund v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978).

---

[1] As described with supporting citations throughout § VIII of Pl.'s Mem. P. & A. Opp. Def.'s Mot. Summ. J. and ¶¶ 89-193 of Pl.'s Stmt. Mat. Facts No. Gen. Issue.

1

After discharge #1, the only statutory exception available to Defendant to return Plaintiff to active duty was if Plaintiff had committed the criminal offense of fraudulent separation in violation of 10 U.S.C. § 883. Yet, Defendant omitted from the record hundreds of documents and hours of witness testimony exculpatory to Plaintiff as against Defendant's fraud claim,[2] a claim for which Defendant's pretrial hearing found no probable cause.

In reviewing agency action "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. It is improper for a district court to review only a "partial and truncated [administrative] record." *N.R.D.C. v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). The "whole record" standard includes "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Stainback v. Sec'y of the Navy*, 520 F. Supp.2d 181, 185 (D.D.C. 2007), *quoting Holy Land Foundation for Relief and Development v. Ashcroft*, 219 F. Supp. 2d 57, 65 (D.D.C. 2002).

"The agency enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary." *Fund for Animals v. Williams*, 391 F. Supp.2d. 191, 197 (D.D.C. 2005) (citations omitted). By the raw numbers alone, Defendant tendered, at most, 36% of the documents and designated that one-third as the "whole record." Defendant omitted more than 1800 documents, and three videotapes showing important demeanor evidence, from the materials *submitted by Plaintiff* to the ABCMR. In addition, Defendant omitted more than 50 pages of documents that "(1) were known to the agency at the time it made its decision, (2) are directly related to the [waiver defense], and (3) are adverse to the agency's [waiver defense]."[3]

---

[2] As described with supporting citations throughout § II of Pl.'s Mem. P. & A. Supp. Cross-Mot. Summ. J. and ¶¶ 33-87 of Pl.'s Stmt. Mat. Facts No. Gen. Issue.

[3] *Fund for Animals v. Williams*, 391 F. Supp. 2d. 191, 198 (D.D.C. 2005), *quoting San Luis Obispo Mothers for Peace v. N.R.C.*, 751 F.2d 1287, 1327 (D.C. Cir. 1984). Those documents

Almost 99% of what Plaintiff has tendered merely *completes* the record. Extra-record evidence consists of "evidence *outside of* or *in addition* to the administrative record" that was not necessarily considered by the agency. *Pacific Shores Subdivision California Water District v. U.S. Army Corps of Engineers*, 448 F. Supp.2d 1, 5 (D.D.C. 2006) (emphasis in original). As to the remaining 1% that is actually "new" to the record, the court is permitted to look at it under several of the exceptions provided by *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), such as, under the first and fourth exceptions, to ascertain "background information" on the substantive issues, *Environmental Defense Fund v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981), or, under the third exception, because the agency "deliberately or negligently excluded documents or other evidence that may have been adverse to its decision." *Amfac Resorts, L.L.C. v. Dep't of Interior*, 143 F. Supp.2d 7, 12 (D.D.C. 2001), or, under the second exception, because the agency "failed to consider factors which are relevant to its final decision," *Esch v. Yeutter*, 876 F.2d at 991.

Several hundred pages missing from what Defendant tendered as Plaintiff's Application for Correction of Military Record, (AR 043-389) (Tab 2), are favorable to Plaintiff and unfavorable to Defendant.[4] Moreover, the ABCMR itself procured Plaintiff's official military personnel file (OMPF). Plaintiff did not submit that. The 198 page OMPF that Defendant tendered here, (AR 836-1034) (Tab 12), is jumbled into disarray and inserts nearly 20 pages not

---

are contained within Plaintiff's Second and Third Motions to Supplement the record and are further discussed, *infra*.

[4] For example, Defendant omitted the verbatim transcript of the pretrial hearing that made the no-probable-cause finding, (AR 1458-2055) (Tabs 22-23), handwritten notes and emails of an internal investigator that are exculpatory in ways described in Plaintiff's two briefs, (AR 1290 - 1450) (Tab 20), Plaintiff's First and Second Amendments to his ABCMR Application, (AR 1035-51) (Tabs 13-14), Plaintiff's two FOIA requests and the agency's responses which are exculpatory in ways described in Plaintiff's briefs, (AR 1052-80) (Tabs 15-16), hundreds of pages produced during the court-martial litigation, (AR 2056-2839) (Tabs 24-27), and more.

3

actually in the OMPF. *See, e.g.*, (AR 945-59, 966) (miscellanea from disability agency's computer database, etc.). Defendant's version of the OMPF adds derogatory documents, (AR 836-840, 965), omitted one favorable document only to be found elsewhere in its record, (AR 397-97) (counsel's rebuttal to reprimand), and omitted one favorable document completely, (AR 2840-50 "Tab 28"; *cf.* 222-23) (counsel's rebuttal to adverse performance evaluation).[5]

II. PLAINTIFF'S FIRST MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Defendant opposes three items contained in Plaintiff's First Motion to Supplement the Administrative Record -- the Fiore Memo and the two Chiang Memoranda.[6]

*A. The Fiore Memo*

The Fiore Memo, (AR 2798-2801), was part of the transmittal of the resignation ("RFGOS") document. Defendant tendered an incomplete version of the Fiore Memo, (AR 241-243), that omits an important page from the document. *See* AR 2798. Somebody within the agency must have underlined and highlighted the sentence at AR 242 that says "cannot approve a resignation request where the officer continues to claim he is a civilian and refuses to

---

[5] Plaintiff has in his own possession the OMPF produced to him, in response to his own FOIA/PA request, on July 30, 2007 (just one month prior to filing his Complaint) by the National Personnel Records Center (Army Human Resources Command Veterans Records) located in St. Louis, Missouri. Plaintiff could have moved to replace Defendant's AR 836-1034 with the agency's true military record, but he sought to limit the number of spin-off disputes. Instead, Plaintiff painstakingly reviewed AR 836-1034, listed the relevant aspects of his military record, together with page citations, at ¶¶ 2-3 of Pl.'s Stmt. Mat. Facts No. Gen. Issue and at § IV of Pl.'s Mem. P. & A. Opp. Def.'s Mot. Summ. J., and added missing OMPF documents such as Tab 28 with his First Motion to Supplement the record.

[6] Defendant also objects to duplicates, but such was the nature of its own Administrative Record submission, and such was the nature of the record before the agency. Plaintiff's several habeas petitions included the same attachments. Plaintiff submitted evidence in whole and complete form. Defendant's version of the record included items that were incomplete. Plaintiff has re-submitted them in their complete form to protect the record, and Plaintiff cited to them in their complete form. *See, e.g.*, AR 235-238, 222-223; *cf.* AR 2816-2839 (Tab 27), 2840-2850 (Tab 28). Defendant has not demonstrated how it is prejudiced by duplicates, its own or Plaintiff's.

4

<u>acknowledge the jurisdiction of the military</u>," because Plaintiff did not submit the document to the ABCMR in that form.

As part of the RFGOS transmittal process, the Fiore Memo was contemporaneously served upon Plaintiff's counsel, (AR 2798), to provide Plaintiff an opportunity to respond. That the Fiore Memo is written by a lawyer is of no import. No privilege applied because it was part of the formal transmittal process. Regardless, any privilege was waived by its disclosure. *In re Sealed Case*, 877 F.2d 976, 980-981 (D.C. Cir. 1989).  In this Circuit, an inadvertent disclosure waives any privilege, even where the inadvertent disclosure "perhaps caus[es] grave injury to the organization. But that is as it should be." *Id.* at 980.

The RFGOS decision maker never explained on the record why the Fiore Memo was incorrect in concluding that an administrative discharge exceeded the limited grant of jurisdiction provided by 10 U.S.C. § 803(b). Plaintiff similarly asked the RFGOS decision maker to ignore the RFGOS and instead to declare discharge #1 legal and binding upon the Army. (AR 2768-2774). Plaintiff's counsel wrote again:

> To put a stop to this seemly endless string of actions against our client, we ask that you determine that his separation on September 14, 2001 was valid *instead of ruling on the resignation*.

(AR 2778) (emphasis added).

Three years later, the ABCMR also failed to respond to the statutory questions raised in the Fiore Memo. The ABCMR noted the contents of the Fiore Memo, (AR 031-032), but then completely ignored the Fiore Memo in its Discussion and Conclusions, (AR 038-042). The Fiore Memo clearly states Defendant's understanding of the case *at the time of the RFGOS* -- that the entire case revolved around whether Plaintiff received a facially valid discharge certificate on September 14, 2001 ("discharge #1"):

5

> "… Hypothetically, if Schaefer is truly a civilian, then it begs the question whether a resignation from the service is even possible. Case law suggests that it is not … [citations and discussion omitted] … The court martial in this case derives its jurisdiction from Art. 3(b) of the UCMJ; this limited grant of jurisdiction only extends to cases of fraudulent separation. While this article permits trial, it does not expressly permit a resignation request."
>
> "4. MAJ Schaefer's resignation, if approved in current form, could easily spark another round of civil litigation … The resignation also does not resolve the legal issue concerning the validity of MAJ Schaefer's 14 September 2001 disability discharge, leaving MAJ Schaefer the latitude to refile his lawsuit in civil court to resolve that issue …, and the Army to defend the suit in federal court at the risk of significant adverse policy precedent and money damages."
>
> "5. … The likely consequences of approving this resignation are that MAJ Schaefer will again file suit in U.S. district court, this time challenging the lawfulness of the discharge he obtains as a result of this resignation request. If successful, the resignation in lieu of court martial will be void, and the previous disability discharge will be validated."

(AR 2966-69.) The Fiore Memo *never once* suggests the RFGOS can be interpreted as submission to military control. It suggests the opposite. It acknowledges and highlights that Plaintiff "states in his resignation that he is not a member of the military and that he has not voluntarily submitted to the jurisdiction of the U.S. Army." (AR 2800.) It contradicts Defendant's current waiver defense. That defense is a *post hoc* rationalization for discharge #2.

Defendant objects to the Fiore Memo on relevance grounds. That argument is more appropriately left to Defendant's anticipated opposition and reply briefs, since the document is already firmly fixed in the record. It is not only the legal analysis contained within the document that is relevant. The mere existence of the document itself is relevant. The fact that the Fiore Memo was before the RFGOS decision maker *and* the ABCMR is relevant. The fact that it was twice ignored is relevant. The fact that it acknowledges and highlights Plaintiff's reservation of rights is relevant. What it *does not* say is relevant. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see New Jersey v. T.L.O.*, 469 U.S. 325, 344 (1985) (adopting an expansive view of relevance, noting that relevant evidence "need not conclusively prove the ultimate fact in issue").

The cases Defendant cites, at its footnote 4, are inapposite. Those cases involved the Government's attempts to prevent the release of documents. They concerned FOIA requests and the narrow scope of Exemption 5 to the FOIA, and they concerned motions for protective orders to prevent disclosure. They did not concern evidentiary relevance nor did they concern documents already released. Defendant has failed to establish any privilege. The Fiore Memo was disclosed long ago. Defendant itself submitted the Fiore Memo to this Court as part of the record for the case at bar. (AR 241-243.)

*B. The Chiang Memoranda*

The two Chiang Memoranda are part and parcel to Plaintiff's two separate FOIA requests. (AR 1052-1080) (Tabs 15 and 16). Defendant fails to establish any privilege, and the burden is on Defendant to do so. The Chiang Memoranda were made part of the record when the agency produced them to Plaintiff in response to his first FOIA request. (AR 1052-53.) The agency then highlighted the importance of these two memoranda when it responded to Plaintiff's second FOIA request. (AR 1079-80.) At no time did the agency assert any privilege, not even after Plaintiff directed the agency's attention to the Chiang Memoranda in his second FOIA request. (AR 1078.) The Chiang Memoranda were before the agency when the agency considered Plaintiff's application for correction of his military records.

Even if this Court were to view the Chiang Memoranda as extra-record evidence, they would still be admissible under the principles of *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989).

"[I]t may sometimes be appropriate to resort to extra-record information to enable judicial review [of agency action] to become effective" … such as … "when agency action is not adequately explained in the record before the court." *Id.* at 991. "One recognized exception is when the supplemental information is relevant to the final decision." *Delano v. Sec'y of Air Force*, 391 F.Supp.2d 79, 89 (D.D.C. 2005) (permitting servicemember in a military records correction case to supplement the record over Defendant's relevance objections).

      The ABCMR failed to provide any rationale for several conclusory statements made in its decision. The only way for this Court to review the agency's rationale is to now review the Chiang Memoranda in conjunction with the ABCMR decision. Here are two examples.  First, only by review of the Chiang Memoranda (at AR 1059) does it become evident the agency relied upon a flawed mischaracterization of the RFGOS as a guilty plea or plea bargain. (AR 1059) ("A resignation in lieu of court-martial can certainly be analogized to a plea of guilty, *although apparently there is no case law that is exactly on point for situations like the [Plaintiff's]*.") (emphasis added). Second, the ABCMR did not explain its conclusory statement that "USAPDA has the authority, as is evident in this case, to direct Fort Benning to revoke the orders, which it did." (AR 038.) Only by looking at the Chiang Memoranda does it become evident that the agency was relying upon a flawed but unstated premise that Colonel Bell had delegated authority from Major General Adair. The Chiang Memoranda present the rationale thusly:

> One may *theorize* that PDA possessed the necessary authority because the commander of PDA, MG Frost, appeared to be 'dual-hatted': … That is, *it seems likely* that the PERSCOM commanding general simply delegated to his PERSCOM subordinate, MG Frost, PERSCOM's authority to take final administrative action in medical disability separations. MG Frost, in her turn, *presumably* delegated her authority to her deputy commander at PDA, COL Bell … *If this theory is correct*, then it means PERSCOM did in fact give its approval to the applicant's separation and recall, contrary to the applicant's argument, via the authority delegated down to COL Bell. This would satisfy the requirement of Paragraph 4-24 of AR 635-40 that

8

> PERSCOM take the final administrative action on medical disability separation cases.

(AR 1057) (emphasis added). The Chiang Memoranda go on to state:

> …recommend that it would be prudent to obtain advisory opinions from PDA and PERSCOM regarding how each of these agencies interpret Paragraph 4-24 of AR 635-40; whether there was any delegation of PERSCOM authority to PDA and/or PDB at the time of the applicant's case.

(AR 1057.) The second of the Chiang Memoranda reiterates, but adds a *verbal* twist:

> recommend that it would be prudent to obtain advisory opinions from PDA and PERSCOM regarding how each of these agencies interpret Paragraph 4-24 of AR 635-40; whether there was any *verbal and/or written* delegation of authority by PERSCOM to PDA at the time of the applicant's case.

(AR 1068) (distinction italicized). No such delegations existed, which only becomes clear by comparing four pieces of evidence to one another -- the ABCMR decision, the Chiang Memoranda, Plaintiff's second FOIA request, and Defendant's response to Plaintiff's second FOIA request. (AR 1078-1080.)

Also, when this Court "needs more evidence to enable it to understand the issues clearly," it has discretion to supplement an administrative record. *Esch v. Yeutter*, 876 F.2d at 991. The ABCMR makes the unsupported and conclusory statement that "Even though the applicant was issued a hard copy DD Form 214 on 14 September 2001, this document was without legal effect because the authority to issue it had been revoked" and that "…either a verbal or hard copy order is sufficient…" (AR 040.) Only when one looks to the Chiang Memoranda does it become evident that the agency was relying upon an erroneous "legal hold" theory by applying two inapplicable criminal "legal hold" cases to create a new "legal hold" theory for physical disability cases. Plaintiff describes this erroneous "legal hold" theory in his Mem. P. & A. Opp. Def.'s Mot. Summ. J., at 14-19. In this Circuit, "[a] strong theme of our opinions has been that

an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege …" *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). But for the Chiang Memoranda, this Court would not have seen how Defendant seeks to create secret law in Plaintiff's case -- a secret new "legal hold" arrow in the Army's quiver for use in any of the nearly 10,000 physical disability cases the Army reviews each year. That arrow was only intended to provide the Army and other services a mechanism to catch and hold criminals before they discharged from the service. It was not intended to permit low level Army bureaucrats to tinker with the Secretary of the Army's already-established determination that a soldier shall be discharged with disability severance pay.

### III.  PLAINTIFF'S SECOND MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Defendant opposes all 123 pages offered by Plaintiff in his Second Motion to Supplement the Administrative Record. (AR 2871-2996) ("Tab 31"). Several points of clarification are due.

Please note that Plaintiff created Tab 31 separately to aid the Court's review of the evidence showing that Plaintiff preserved his objection to jurisdiction at all times after discharge #1. The highlighting and underlining within these documents, the gathering together of these documents within a stand-alone "Tab 31," and the inclusion of regulation extracts, was all intended to provide the court with a single source reference when reviewing Plaintiff's opposition to Defendant's waiver defense.

Most importantly, 120 out of 123 pages at Tab 31 *are already part of the record*, but upon four separate grounds. Only 3 pages are totally "new."  Each of these four categories shall now be addressed separately.

(1)  The first category includes 53 out of 123 pages. They were already included in

10

Defendant's submission of the record and are just highlighted duplicates -- highlighted for the reason explained above. This first category includes AR 2871-72, 2882-2889, 2917-2930, and 2949-2980.

(2) The second category includes 16 pages, (AR 2981-2996), of relevant Army Regulation extracts, which Plaintiff could have just cited but included here to aid the Court's review.

(3) The third category includes 51 pages that are already part of the administrative record because (a) they were "known to the agency at the time it made its decision, … are directly related to the [Defendant's waiver defense], and … are adverse to the agency's [waiver defense]," *Fund for Animals v. Williams*, 391 F. Supp. 2d. 191, 198 (D.D.C. 2005), and also because (b) they were either "directly or indirectly considered by agency decision-makers and include[] evidence contrary to the agency's [waiver defense]," *Holy Land Foundation for Relief and Development v. Ashcroft*, 219 F. Supp.2d 57, 65 (D.D.C. 2002). These forms were created-authored-processed-and-stored by the agency itself. They were created-authored-processed-and-stored by the agency while Defendant unlawfully held Plaintiff under military apprehension and control. Several are administrative forms reviewed by military officials ("directly or indirectly considered") and accepted together with Plaintiff's explicit provisos preserving his jurisdictional objection -- provisos like "This is submitted for administrative purposes only. I do not recognize jurisdiction over me by the U.S. Army. I am a civilian." These documents directly contradict Defendant's waiver defense. "A plaintiff can make a *prima facie* showing that an agency excluded adverse information from the record by proving that the documents at issue (1) were known to the agency at the time it made its decision, (2) 'are directly related to the decision,' and (3) 'are adverse to the agency's decision.'" *Fund for Animals v. Williams*, 391 F. Supp. 2d. at 198

11

(citations omitted). These 51 pages are comprised of the following:

>AR 2873: a letter showing that Plaintiff continued his civilian practice and law partnership after discharge #1 in opposition to any claim by the Government that he was in the military.

>AR 2874 - 81: communication between Plaintiff's counsel and the pre-TRO internal JAG Corps investigator showing Plaintiff refused to answer the investigator's proposed "interrogatories" unless the investigator confirmed in writing that the act of answering those questions would not be considered as voluntary submission to military authority. Because the investigator would not accept Plaintiff's offer to cooperate, Plaintiff did not answer his questions. This event is already described within the current record, (AR 1353-54, 631-32, 667-69), but these documents complete the description.

>AR 2911-16 and 2931-48: various attempts by the military prosecutor to have Plaintiff agree to submit to military jurisdiction in exchange for other terms, consistently rejected by Plaintiff.

>AR 2890-2903: various post-discharge #1 finance and leave documents, showing Plaintiff inserted a reservation of rights into all administrative documents the military processed on him after discharge #1.

>AR 2904-07: evidence that Plaintiff attempted to return erroneous Army salary (post-discharge #1 salary) but that the Army refused to take it back -- ostensibly to "create" facts in the case for its later use.

(4)  The fourth and final category includes the only "new" pages -- 3 pages, (AR 2908-10), evidence that Plaintiff transferred erroneous Army salary (post-discharge #1 salary) into

escrow with Plaintiff's counsel after the Army refused to take it back.

All 54 pages contained within the third and fourth category, and indeed all 123 pages included at Tab 31, simply respond to one of Defendant's *post hoc* rationalizations, its waiver defense. Defendant moved for summary judgment on this ground. Plaintiff is entitled to rebut. The waiver argument first arose in the Chiang Memoranda, discussed, *supra*. The ABCMR violated 10 U.S.C. § 1556, and its own internal policy,[7] when it received these two advisory opinions without forwarding them immediately to Plaintiff's counsel. Plaintiff only obtained these advisory opinions through his after-the-fact FOIA requests. If the agency had provided Plaintiff these advisory opinions as it was supposed to, Plaintiff could have and would have directed the ABCMR's attention to the 51 pages already present in the agency's own records system, and Plaintiff would have submitted the other 3 new pages. Even if this material were viewed as new, still, "[c]onsideration of extra-record information is appropriate when simply reviewing the administrative record is not enough to resolve the [waiver defense]." *Esch,* 876 F.2d at 991.

This entire case is about whether the Army had jurisdiction over Plaintiff at any time after September 14, 2001, and especially whether the Army had jurisdiction to issue Plaintiff a discharge on October 1, 2002, when Plaintiff was not even in the military. Jurisdiction is a legal question which this Court reviews *de novo*. *Bell v. Hood*, 327 U.S. 678 (1946). Defendant's waiver defense is all about jurisdiction. The Court should examine *all* the evidence showing Plaintiff's consistent challenge to military jurisdiction. Fed. R. Civ. P. 56 permits supplementation with matters that are relevant to the determination to include affidavits.

---

[7] "When necessary, advisory opinions are obtained from other Army staff elements. If an advisory opinion is obtained, it will be referred to the applicant for comment before the application is further considered." http://arba.army.pentagon.mil/abcmr-overview.cfm.

13

IV. PLAINTIFF'S THIRD MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Plaintiff's Third Motion to Supplement includes two declarations, (AR 2997-3013), and 12 pages of documentation, (AR 2859-70) (Tab 30). These 12 pages include a 6-page website printout, (AR 2859-64), 4 pages taken from the agency's disability evaluation file, (AR 2865-68), and 2 miscellaneous pages described in Plaintiff's Declaration, (AR 2869-70).

Defendant should have included a complete copy of the Medical Evaluation Board and Physical Evaluation Board Proceedings, maintained by the agency, when Defendant tendered the administrative record to this Court. Defendant did not. Accordingly, Plaintiff has tendered these 4 important pages from those proceedings, (AR 2865-68), in rebuttal to one aspect of Defendant's fraud claim.[8] Had these pages been included within the record as tendered by Defendant, Plaintiff would have discussed them in his responsive briefs. Instead, Plaintiff had to describe and discuss them at ¶¶ 28 and 30 of his Declaration. (AR 3005-06).

The 6-page website printout shows that the JAG Corps' personnel assignments office continued to advertise Plaintiff's vacancy all the way through the day of discharge #1, which contradicts the agency's argument that this office had no idea discharge #1 was still pending. It also contradicts the testimony of a witness relied upon heavily by the ABCMR. *See* § II (D) of Pl.'s Mem. P. & A. Supp. Cross-Mot. Summ. J. at 39. The existence of this website advertisement is discussed throughout the record at AR 699-700, 1499, 1601, and 1998-99. These 5 pages and the discussion of them elsewhere in the record are verified by Plaintiff in his Declaration at ¶¶ 2-7 and 45. (AR 2997-98, 3010.)

The remaining two documents rebut other aspects Defendant's fraud claim, including the libelous claim that Plaintiff violated his professional obligation towards clients at the time of his

---

[8] As further explained within § II of Pl.'s Mem. P. & A. Supp. Cross-Mot. Summ. J.

discharge. Considering how flagrant and overreaching it was for certain individuals in the JAG Corps, witnesses against Plaintiff, to claim Plaintiff essentially stole client files from his office, when in fact these individuals knew or should have known of the policy established at AR 2870, the addition of AR 2870, and Plaintiff's Declaration ¶¶ 26 and 27, is quite warranted. Considering one of those same individuals was Colonel Richard Gordon -- a person who testified against Plaintiff, wrote the erroneous post-discharge #1 adverse evaluation report that is the subject of the Plaintiff's Complaint, (AR 2840-50) (Tab 28), was implicated within the "Team JAG" email traffic described and cited at page 26 of Pl.'s Mem. P. & A. Opp. Def.'s Mot. Summ. J., and a person whose adversarial relationship and litigation conflicts of interest with Plaintiff are shown, for example, at AR 2847-49 and 2855-56 -- the addition of AR 2869 and Plaintiff's Declaration ¶¶ 21-26 and 29 is also quite warranted.

  All of the above, including, more generally, Defendant's *sua sponte post hoc* waiver defense, also warrants the addition of the two-and-a-half page long (double spaced) Declaration of Lauren N. Johnson-Naumann, (AR 3011-13), who described the litigation as "the most acrimonious case, not involving a death, I had seen in my then fifteen years of service." (AR 3013 ¶ 9). Lieutenant Colonel Johnson-Naumann was the U.S. Air Force Defense Counsel appointed to represent Plaintiff, half way through pretrial motions, after no conflict-free Army JAG Corps officer could be located to assist Plaintiff in his defense, and after the entire U.S. Army Trial Judiciary recused themselves from Plaintiff's case and arranged the detailing of a U.S. Marine Corps judge. (AR 3011-3012 ¶¶ 3-4.) Lieutenant Colonel Johnson-Naumann's statements attest to the fact that nobody involved in the process ever considered the processing of the resignation as a waiver of the jurisdictional objection, (AR 3012 ¶¶ 5-8), which directly contradicts Defendant's position in the case at bar.

15

In sum, this Court is permitted to consider, and it would be warranted in considering, all of the items within Plaintiff's Third Declaration to Supplement the record pursuant to the first, second, third, and fourth exceptions of *Esch v. Yeutter*, and the other principles established by the cases cited in §§ I, II, and III of this brief, *supra*.

### *Plaintiff's Opposition to Defendant's Motion to Strike*

Plaintiff's briefs are 45 pages each, not 48. Each complies with the Local Rules and was therefore duly filed by the Clerk of Court. LCvR 7 (e) ("documents that fail to comply with this provision shall not be filed by the Clerk"). Defendant cites no case to establish otherwise. The Defendant's opinion as to custom and usage without citation is noted but is neither dispositive nor consistent with the Local Rules which clearly allow for a 45 page cross-motion and a 45 page opposition. For Defendant to argue the briefs should be shorter "[g]iven the straightforward nature of the case" places the cart before the horse and ignores the tentacle-like and circular approach Defendant has taken throughout this litigation ever since discharge #1 -- including the ABCMR opinion. A reading of each brief will make plain that they have already been trimmed to the bone.

Regarding Plaintiff's Statement of Material Facts As To Which There Is No Genuine Issue, Defendant misinterprets the use of the word "concise" in the Local Rules and also fails to specify with any particularity where surplusage exists in that document. Long and concise are not necessarily inconsistent concepts. The great majority of facts averred therein are taken straight from the Complaint, something defendants are accustomed to answering with a straightforward "admitted," "denied," or "admitted in part and denied in part." Defendant demonstrates no undue burden in doing so now by responding to Plaintiff's Statement of Material Facts As To Which There Is No Genuine Issue. Beyond those facts taken from the

Complaint, most of the rest were added in response to the waiver defense Defendant raised in its own motion for summary judgment. Plaintiff would submit that his Statement of Material Facts As To Which There Is No Genuine Issue is sufficiently "concise" and certainly does not warrant the Court's striking it from the record. Before determining whether the statement is "concise" versus unduly superfluous and burdensome, this Court must view it in context by first reading Plaintiff's two briefs. Otherwise, this Court would be deciding the issue in a vacuum.

The word "concise" is used as a qualifier in three rules, at LCvR 7 (a) ("Statement of Points and Authorities"), at LCvR 7 (h) ("Motions for Summary Judgment"), and at LCvR 56.1 ("Motions for Summary Judgment"). LCvR 7 (a) is the more general provision, applying to motions generally. LCvR 7 (h) and LCvR 56.1 are the more specific provisions, applying to Motions for Summary Judgment. Ordinarily, the specific will prevail over the general. *See, e.g., Norwest Bank Minnesota Nat. Ass'n v. F.D.I.C.*, 312 F.3d 447, 451 (D.C. Cir. 2002), *citing Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *Holly Sugar Corp. v. Veneman*, 355 F.Supp.2d 181, 188 (D.D.C. 2005), *citing Edmond v. U.S.*, 520 U.S. 651, 657 (1997).

We are presently at cross-motions for summary judgment. In LCvR 7 (h) and LCvR 56.1, the use of the qualifier "concise" only applies to a party's opposition. In other words, it would only apply to a nonmoving party's response to the moving party's Statement of Material Facts As To Which There Is No Genuine Issue -- e.g., the nonmoving party's Statement of Genuine Issues. This makes perfect sense, since the flow of motions practice ordinarily includes shorter responses at each step. Hence, a nonmoving party's Statement of Genuine Issues would ordinarily be shorter and more "concise" than the moving party's Statement of Material Facts As To Which There Is No Genuine Issue, just as a reply brief is shorter.

17

*Conclusion*

For all of the reasons stated, this Court should GRANT Plaintiff's First, Second, and Third Motions to Supplement the Administrative Record, and this Court should DENY Defendant's Motion to Strike Plaintiff's Memoranda in Support of Plaintiff's Cross-Motion for Summary Judgment, Opposition Motion, and Plaintiff's Statements of Material Fact and Issues.

Respectfully submitted,

\_\_/s/_____
Gary R. Myers (157115)
78 Clark Mill Road
Weare, New Hampshire 03281
1-800-355-1095
FAX (603) 529-3009
Attorney for Plaintiff