## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MALCOLM G. SCHAEFER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Number: 1:07CV01550 (RJL)** |
| | ) | |
| **THE HONORABLE PETE GEREN,** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant respectfully submits this reply to Plaintiff's opposition to Defendant's motion for summary judgment, and its opposition to Plaintiff's cross-motion for summary judgment.[1] Defendant is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56, because there is no genuine issue or dispute as to any material fact and Plaintiff fails to meet his burden to demonstrate the Army Board for the Correction of Military Record's ("ABCMR") denial of relief was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. In support of this submission, Defendant relies upon the complaint, the administrative record, Defendant's opening motion and memorandum, and Plaintiff's opposition and cross-motion memoranda.[2]

## I.  INTRODUCTION

---

[1]  Defendant's response to Plaintiff's counter-statement of facts is filed contemporaneously.

[2]  Citations:  Complaint ("Compl. _."); Administrative Record ("AR _."); Defendant's Motion for Summary Judgment ("Def. Br. _."); Plaintiff's Opposition and Opposition to Defendant's Statement of Material Facts ("Pl. Oppn. _."); and Plaintiff's Cross-Motion and Statement of Material Facts ("Pl. Br. _.").

Plaintiff is simply disgruntled with the ABCMR's decision and does not even allege the ABCMR failed to consider his claims or evidence. Plaintiff, a former commissioned officer in the Judge Advocate General's Corps ("JAG"), had an active-duty service obligation based on federally funded undergraduate and legal education but after unsuccessfully manipulating the physical disability system, he voluntarily resigned from the Army in lieu of court-martial for fraudulent discharge. Plaintiff alleges it is arbitrary and capricious for the ABCMR to deny his request to upgrade his discharge and to expunge an adverse Officer Evaluation Report ("OER") and a General Officer Memorandum Of Reprimand ("GOMOR").

Defendant is entitled to summary judgment because the ABCMR exhaustively examined Plaintiff's personnel files and application, and then set out in great detail the facts alleged and its own reasoned analysis. The ABCMR found no material error or injustice existed in the determination that Plaintiff was ineligible for a disability discharge simply because he was a JAG with sore knees, or in the actions to hold Plaintiff accountable for his misconduct (AR 1-42). The ABCMR found the disability proceedings used accepted medical principles and complied with the regulations in finding Plaintiff "fit" for duty; the Army retained jurisdiction under the Uniform Code of Military Justice ("UCMJ"), because any discharge authorization and orders were legally revoked or because fraudulent discharge jurisdiction attached; and Plaintiff's scheming justified the properly filed adverse OER and GOMOR. Finally, the ABCMR's decision is also based on evidence subjected to judicial scrutiny by the Federal District Court for the Middle District of Georgia in its published opinion denying an injunction and affirming the Army's exercise of jurisdiction over Plaintiff (AR 610-623); and by the Army Trial Judiciary, the Army Court of Criminal Appeals ("ACCA"), and the Court of Appeals for the Armed Forces

("CAAF") in denying habeas relief and other motions (AR 2056-2815).

## II.   STATEMENT OF FACTS.

Defendant respectfully refers the Court to Defendant's Statement of Material Facts Which Are Not in Genuine Dispute (R. # 31, at 22-27) and Defendant's Reply Statement of Material Facts and Opposition to Plaintiff's Counter-Statement of Facts filed simultaneously herewith.

## III.   LEGAL STANDARD.

Plaintiff can only bring suit under the Administrative Procedure Act ("APA"), 5 U.S.C. 702, et. seq.  Based upon this Court's scheduling order and its minute order granting Defendant's Motion to Strike (R. #31), Defendant believes that this Court agreed this case is solely a challenge to the decision of the ABCMR decision under the APA and not a facial constitutional challenge based upon Plaintiff's hypothetical assertions.  If this Court determines this case is anything other than a record-review of the ABCMR's denial of relief, Defendant respectfully requests supplemental briefing.  Additionally, Plaintiff's Opposition cites to non-record documents, specifically internal memoranda of the ABCMR legal advisor.  (Pl. Oppn. 11-13)  These memoranda were not evidence before the Board and should not be considered, as the Plaintiff argues, as the determination of the Board.

Plaintiff's re-filed memoranda do not comply with this Court's prior ruling on Defendant's Motion To Strike (R. # 31) because Plaintiff's memoranda raise non-reviewable claims.  The recently re-filed memoranda do not coherently address the claims originally made (Compl, 26-49),  and fail to recognize that the Complaint is simply a challenge to Plaintiff's denial of relief by the ABCMR and that the other "claims" are a mixture of conclusory

3

statements, nonreviewable allegations, and premature requests for attorney's fees:

> (1) Article 3(b), UCMJ, is unconstitutional on its face, <u>Id.</u> at 26;
> (2) Article 3(b), UCMJ, is unconstitutional as applied, <u>Id.</u> at 36;
> (3) Articles 32 and 34, UCMJ, are unconstitutional as applied, <u>Id.</u> at 38;
> (4) The first physical evaluation board ("PEB") findings constituted final agency action, <u>Id.</u> at 42;
> (5) Revocation of orders is discussed in an Army Regulation, <u>Id.</u> at 44;
> (6) The second PEB was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations, <u>Id.</u> at 45;
> (7) Plaintiff's adverse OER should be expunged, <u>Id.</u> at 46;
> (8) Plaintiff's GOMOR should be expunged, <u>Id.</u> at 47;
> (9) The ABCMR's denial of relief was arbitrary, capricious, lacks substantial evidence and is contrary to the evidence and law, <u>Id.</u> at 48;
> (10) Plaintiff seeks recovery of attorney's fees and expenses, <u>Id.</u> at 49.

R. # 1.  Plaintiff's Claims 1 and 2 are unreviewable for lack of standing and mootness; Claim 3 is unreviewable because Plaintiff did not raise this issue before the ABCMR; Claim 4 is merely a conclusory assertion and does not constitute a separate judicially reviewable action because PEB review is within the scope of the ABCMR's traditional review powers and is not directly reviewable by this Court; Claim 5 is a conclusory assertion that a particular regulation governs military orders; Claim 6 is a conclusory assertion because the second PEB findings must still be examined by the ABCMR before seeking judicial review; Claims 7 and 8 - OER and GOMOR challenges - are within the ABCMR's traditional review power.  Plaintiff's Claim 10 is a portion of the relief requested and not an independent claim.  Thus, only Claim 9 is properly before this Court, and Plaintiff's other arguments, including:  *mens rea* (Pl. Br. 34); the constitutionality of Article 3(b), UCMJ (Pl. Br. 45-49); a "legal hold" theory (Pl. Oppn. 16-22);  "plea bargains" (Pl. Oppn. 22-23); "duress" (Pl. Oppn. 28-31); and a new issue that his resignation was not an objective assessment (Pl. Oppn. 8-10), serve no purpose but to cloud and confuse the issues in this case.

Therefore, the only issue before this Court is an APA review of the ABCMR decision. Plaintiff does not allege specific errors other than bare allegations that the ABCMR ignored testimony or that "Plaintiff sought correction of his military records with the [ABCMR] and was denied relief." (Compl. at p. 26, ¶ 109). Plaintiff's memoranda contain only conclusory assertions that "[t]he ABCMR got it wrong . . ." (Pl. Br. 8); and "[t]he ABCMR violated the APA by presuming administrative regularity in PEB#2" (Pl. Br. 24).[3]

**A.  Summary Judgment.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact - a fact that could change the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Thus, "when ruling on cross-motions . . . the Court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Barr Labs., Inc. v. Thompson, 238 F. Supp. 2d 236, 244 (D.D.C. 2002) (citation omitted).

**B.  Administrative Procedures Act Review of the ABCMR.**

---

[3] Moreover, Plaintiff's factual assertions throughout the briefs skew and distort the actual facts in the ABCMR decision and the record. Specifically, the following alleged "facts" in the brief are just some of the wholly inaccurate speculation, mischaracterization, and argument in footnotes of the memoranda: Plaintiff's cross-motion footnotes 4, 5, 7, 8, 9, 10, 18, 31, 33, 34, 39; Plaintiff's opposition footnotes 5, 10, 11, 12.

As this Court has indicated in its minute order granting Defendant's Motion To Strike (R. # 31), the only issues in this case is review of the ABCMR's decision.  Under the Administrative Procedures Act ("APA"), final agency actions are "subject to judicial review."  5 U.S.C. § 704. Review of an agency's final decision is not *de novo*, it is limited to the administrative record that was before the agency.  See McDougall v. Widnall, 20 F. Supp.2d 78, 82 (D.D.C. 1998) (citations omitted).  A court should overturn a final agency decision only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); Nat'l Ass'n of Home Builders v. Corps of Eng'rs, 453 F. Supp. 2d 116, 123 (D.D.C. 2006).  "Moreover, military boards such as the ABCMR are entitled to even greater deference than civilian administrative agencies."  Labin v. Harvey, 2006 U.S. Dist. LEXIS 17937, *18 (D.D.C. April 10, 2006) (citation omitted).  The Court need only find that the ABCMR's decision "minimally contains a rational connection between the facts found and the choice made."  Labin, at  *19, quoting Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997).

1.  Final Agency Action In This Case Is The Decision Of The ABCMR.

The only final agency action before the Court is the ABCMR's decision (AR 1-42) and not the underlying physical evaluation decision (AR 96-97, 100-101).  Plaintiff improperly attempts to shift the Court's attention from the correct final agency action.  (Pl. Br. 1; Pl. Oppn. 2.)  First, it is undisputed that the ABCMR is an "agency" for purposes of the APA, which defines "agency" to include "each authority of the Government."  5 U.S.C. § 701(b)(1).  More specifically, Congress, under 10 U.S.C. § 1552, entrusted the primary duty of correcting service records with the military correction boards, including the ABCMR.  Harris v. United States, 14 Cl. Ct. 84, 89 (1987).  Second, The Supreme Court defines "final agency action" as an action

that marks "the consummation of the agency's decisionmaking process." Whitman v. American Trucking Co., 531 U.S. 457, 478 (2001). The physical evaluation boards are not a final agency action because their decisions are subject to review and revision by the ABCMR under its statutory agency authority. 10 U.S.C. § 1552. Therefore, the ABCMR's denial of an application is the final agency action reviewable under the APA. See Chappell v. Wallace 462 U.S. 296, 303 (1983); Dickson v. Sec'y of Defense, 68 F.3d 1396 (D.C. Cir. 1995).

## 2. A Very Deferential APA Standard of Review And Presumption Of Lawfulness Is Applied.

A substantially deferential standard applies when reviewing the actions of the ABCMR, and the law requires this Court to presume that the ABCMR acted lawfully. Plaintiff improperly tries to shift the Court's attention from the correct standard of review (Pl. Oppn. 4; Pl. Br. 5). Nevertheless, this Court's review of the Secretary's decision is subject to an "unusually deferential" standard. Piersall v. Winter, 435 F.3d 319, 324 (D.C. Cir. 2006); see also, Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953); Gilligan v. Magaw, 413 U.S. 1 (1973). Only the most egregious agency decisions do not satisfy this very deferential standard. Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1515 (D.C. Cir. 1989). "[T]he function of this Court is not to serve as a super correction board that reweighs the evidence." Charette v. Walker, 996 F. Supp 43, 50 (D.D.C. 1998). Deference to the military is especially necessary when the correction board is determining the fitness of a soldier to continue to serve. See Walker v. Shannon, 848 F. Supp. 250, 255 (D.D.C. 1994) (citing Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). Plaintiff must "overcome the 'strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'" Frizelle, 111 F.3d at 177 (citation omitted). It is well-settled that to rebut this presumption, "the

plaintiff has the burden of showing 'by cogent and clearly convincing evidence' that the decision was the result of a material legal error or injustice." Doyle v. England, 193 F. Supp. 2d 202, 207 (D.D.C. 2002)(citing McDougall, 20 F. Supp. 2d at 82).

Plaintiff asserts an untenable standard but fails to support it by any law, fact or argument; therefore, this Court review's the ABCMR's decision under a very deferential APA standard begins with a presumption that the ABCMR's denial of relief was decided correctly, lawfully, and in good faith. See Frizelle, 111 F.3d at 117.

## IV. ARGUMENT

The ABCMR acted reasonably and lawfully in denying Plaintiff's baseless requests. This Court must "determine *only* whether the Secretary's *decision making process* was deficient, *not* whether his *decision* was correct." Kreis, 866 F.2d at 1511 (emphasis added). The ABCMR's decision-making process shows that it carefully and thoroughly considered Plaintiff's application, and reviewed the evidence he submitted, his military personnel file, and the applicable regulatory requirements before making the reasoned determination that Plaintiff failed to establish the existence of a material error or injustice. (AR 1-42.) This Court should grant Defendant's motion for summary judgment.

### A. The ABCMR Properly Found That Plaintiff Was Ineligible For, And Did Not Obtain, A Disability Discharge.

Despite Plaintiff's assertions to the contrary, Plaintiff was fit for duty (AR 39, ¶ 4) and never obtained a disability discharge. (AR 40, ¶ 7.) The ABCMR concluded that "the authority to act upon PEB proceedings for the Secretary of the Army rests with the PEB itself, or as in this case, the USAPDA." (AR 38, ¶ 3.) The fact that Plaintiff was reviewed a second time by the

exact same individuals who came to a conclusion contrary to their first conclusion does not create separate, distinct determinations but are parts of the same continuous evaluation and determination. It is important to note that, for purposes of clarity, the terms "PEB #1" (AR 96-97) and "PEB #2" (AR 100-101) as used below do not refer to separate determinations but to separate forms that are the written report of findings by the evaluating board that serve as official records of disability processing.

Plaintiff's argument on the moment and constitution of a discharge miss the mark. A discharge is only effected, as is stated in <u>Smith v. Vanderbush</u>, 37 M.J. 56 (C.A.A.F. 1997), by a *valid* discharge certificate. <u>Smith v. Vanderbush</u>, 37 M.J. 56, 58-59 (C.A.A.F. 1997). The court in <u>Vanderbush</u> also found that the soldier in that case "remained eligible for discharge," unlike the Plaintiff in this case. <u>Id.</u> at 60 (quoting lower court's ruling). The ABCMR reasoned that the same authority which authorized the issuance of a DD 214 subsequently revoked the basis and the authorization for it to be issued. (AR 39 ¶ 4, AR 40 ¶ 7.) It was, as the ABCMR determined, without legal effect. (AR 40 ¶ 7.)

Ultimately, the ABCMR properly concluded that the Army agency responsible for operating the disability review system legally reconsidered Plaintiff's case and that Colonel Bell, operating within the authority delegated to him, determined that Plaintiff's original disability determination was invalid. (AR 246-247, 249, 250-252, 254.)

1. The ABCMR Reviewed The Physical Disability Evaluation System Regulations.

The ABCMR thoroughly considered the disability system policies and procedures created when the Secretary of the Army implemented a system of physical evaluation boards as required by 10 U.S.C. §§ 1201-1221, by promulgating Army Regulation ("AReg") 635-40, which

established the Army's Physical Disability Evaluation System.  (AR 35, ¶ 54-55.)  The

regulation is the source for the "policies, responsibilities, and procedures that apply in

determining whether a soldier is unfit because of physical disability to reasonably perform the

duties of his or her office, grade, rank, or rating."  AReg. 635-40, ¶ 1-1.  The objectives of the

disability regulation are to "maintain an effective and fit military organization with *maximum use

of available manpower*" and to "[p]rovide prompt disability processing while ensuring that the

rights and interests of the *Government* and the *soldier* are protected."  Id. (emphasis added).  To

attain the objectives of the physical disability system, the U.S. Army Physical Disability Agency

("USAPDA") will review  "Physical Evaluation Board (PEB) proceedings to ensure that soldiers

are given *uniform* and fair consideration under applicable laws, policies, and directives."  AReg.

635-40, ¶ 2-4e (emphasis added).  The ABCMR specifically noted the orders issuing provisions

of the regulation which state "PERSCOM will dispose of the case by publishing orders or

issuing proper instructions to subordinate headquarters, or return any disability evaluation case

to USAPDA for clarification or reconsideration when newly discovered evidence becomes

available and is not reflected in the findings and recommendations."  AReg. 635-40, ¶ 4-24.

2. The Disability Regulation Specifies Decision Authority Separate From Administrative Duties.

       The ABCMR correctly considered and relied on the disability regulation which clearly

states decision authority is specifically reserved to an agency, the UAPDA, which is part of a

larger organization that is specifically tasked with the administrative duties to process the final

decisions of that agency having decision authority.  (AR 33, ¶ 55.)  The ABCMR noted that the

disability regulation states that the Commander, U.S. Total Army Personnel Command ("TAPC"

or "PERSCOM"), will operate the disability system but authority regarding fit for duty

determinations is reserved to a subordinate agency within PERSCOM, the USAPDA.  (AR 33, ¶ 55a.); <u>see</u> AReg. 635-40, ¶ 2-3.  The ABCMR noted the provisions stating that the Commanding General, USAPDA, operates the disability system "under the operational control of the Commander, PERSCOM."  (AR 33, ¶ 55b); <u>see</u> AReg. 635-40, ¶ 2-4.  The Commanding General, USAPDA, has primary responsibility for "developing the policies, procedures, and programs of the system."  AReg. 635-40, ¶ 2-4b.  The Commanding General, USAPDA, will also make "the *final decision* whether a soldier is unfit because of physical disability except when such decisions are reserved to higher authority."  <u>Id.</u> at ¶ 2-f (emphasis added).  The ABCMR correctly found (AR 38, ¶¶ 1,3) and the regulation clearly conveys that the USAPDA has final decision authority as a subordinate agency of PERSCOM.  The USAPDA is the proponent of the regulation and is identified as "PERSCOM(TAPD-OEA)"  <u>See, e.g.</u>, AReg. 635-40, Preamble, at i.  Therefore, the ABCMR properly concluded that "the authority to act upon PEB proceedings for the Secretary of the Army rests with the PEB itself, or as in this case, the USAPDA."  (AR 38, ¶ 3.)  The ABCMR also properly concluded that, within the disability system, PERSCOM's ministerial duties are performed by the Physical Disability Branch.  (AR 38, ¶ 2).  The PDB is identified throughout the regulation as "PERSCOM(TAPC-PDB)."[4]

Thus, the regulation and the record show that PERSCOM's role has always been merely carrying out the "decisions" of the USAPDA by accomplishing administrative actions or issuing orders.  AReg. 635-40, ¶ 2-3b.  Therefore, the ABCMR properly determined that the revocation

---

[4] While the regulation could be clearer, the Army and the ABCMR's interpretation of the regulation is reasonable and entitled to deference.  <u>See</u> Cargill v. Marsh, 902 F.2d 1006, 1008 (D.C. Cir. 1990) (discussing the heightened deference Congress intended the courts to accord Correction Board determinations under 10 U.S.C. § 1552 (a)).

of the disability authorization and the reconsideration of Plaintiff's case was accomplished

pursuant to specified authority and responsibilities in the disability regulation (AR 38, ¶¶ 1-4).

3.  Plaintiff's Claim That The Disability Regulation Was Inaccurate Misrepresents The Facts.

The ABCMR properly determined that the USAPDA has the authority to "return

proceedings to the PEB for reconsideration if it deems such an action is appropriate." (AR 38 ¶

1.)  The ABCMR reviewed the sworn testimony of the USAPDA Deputy Commander, Colonel

Bell (AR 18, ¶ 21a), and the sworn testimony of the USAPDA Legal Advisor, Mr. Brower (AR

18, ¶21b).  The ABCMR concluded that their actions-as the USAPDA-based upon receipt of new

information was within its authority, including sending Plaintiff's case back to the PEB.  (AR 38,

¶ 3).  Thus, the ABCMR also necessarily gave substantial weight to Colonel Bell's testimony

that the Commanding General, USAPDA, authorized him, as the deputy commander, to conduct

daily operations and make final decisions on physical disability cases not reserved to higher

authority (AR 1090: 21-22; AR 1090: 1-7; AR 1122: 8-19).  As the Board pointed out, neither

the fit for duty nor the unfit for duty determinations in this case "went to PERSCOM." (AR 37,

¶ 3.)  The ABCMR properly concluded that an authorization or delegation of authority within the

circumstances of this case did not have to be in writing (AR 38, ¶ 3).

The ABCMR considered the regulation provisions (AR 33, ¶ 55) which show that within

the disability system, PERSCOM's operational control is limited to ministerial functions and the

regulation clearly states that PERSCOM will "accomplish final administrative actions in

processing physical disability cases; issue needed orders or other instructions for the [Secretary

of the Army], *based on the decisions* of the Commanding General, [USAPDA]." AReg. 635-40,

¶ 2-3b. The responsibility to operate the disability system requires the Commanding General,

PERSCOM, to make decisions and take actions to fulfill these *ministerial duties* but clearly

reserves *final decisions* to the USAPDA.  Id.  As such, the Commanding General, PERSCOM

could place members of PERSCOM, here, the PDB, within the offices of other agencies,

including subordinate PERSCOM agencies like the USAPDA.  (AR 250-251.)  There is no

requirement that the Commanding General, PERSCOM, specifically state in the regulation, or

update the regulation to reflect, that PERSCOM employees, in this case the PDB, perform their

duties while working within another PERSCOM agency, USAPDA, that has a specialized

mission.  Moreover, the ABCMR noted that the regulation is outdated, but that fact does not

change its decision because even if the "policies and procedures in effect were not contained in a

regulation does not make them less legitimate." (AR 38, ¶¶ 2-3).  Additionally, the ABCMR

determined that Plaintiff "was not harmed in any reliance he may have placed on the regulation,

as the first PEB finding never went to PERSCOM . . . ."  (AR 38, ¶ 3.)

The ABCMR decision properly relied on the sworn testimony of the Deputy Commander

(AR 1093: 17-22: AR 1094: 11-20) which showed that the office of the USAPDA is organized

into two offices, an Operations Evaluations Agency ("OEA") and a Physical Disability Branch

("PDB") both of which are part of PERSCOM.  As seen in the regulation, the evaluations branch

or "TAPD-OEA" is synonymous with the Commanding General, USAPDA; and the disability

branch or TAPC-PDB, is synonymous with the disability regulations references to PERSCOM or

PERSCOM (TAPC-PDB).  Plaintiff attempts to confuse the issues by distorting this clear

delineation of authority and duty.  Nevertheless, Plaintiff's "same agency" argument (Pl. Oppn.

10, pt. V), and entire cross-motion for summary judgment (Pl. Br. 7-28) are of no merit because

the ABCMR properly relied on the evidence in the record and the regulation in determining that

13

the "the authority to act upon PEB proceedings for the Secretary of the Army rests with the PEB itself, or in this case, the USAPDA."  (AR 38, ¶ 3.)

4.  Plaintiff Overstates The Designation Of Authority In The Regulation To Support His Theory.

Plaintiff's cross-motion asserts that the first DD Form 214 was valid (Pl. Br. 7-8); that any actions by the Army after that date are unlawful (Pl. Br. 34); and that the second DD Form 214 that was issued was invalid (Pl. Br. 47).  All of these arguments are grounded on Plaintiff's erroneous attack of the ABCMR's decision by his bare assertion that the reconsideration of Plaintiff's case was invalid based on Plaintiff's interpretation of a single sentence within a subsection of a paragraph within an appendix to the disability regulation. (Pl. Oppn. 9, Pl. Br. 16).  The ABCMR considered his claim (AR 8, ¶ 4f-h) and the relevant portions of the regulation paragraph he discusses which is entitled "Final disposition instructions."  See AReg. 635-40, ¶ E-9.  However, the ABCMR properly reviewed the claim in its entirety and read the relevant portions together and interpreted Plaintiff's single sentence within the context of the regulation. (AR 33, ¶¶ 54-55; AR 34, ¶¶ 56-60).  Plaintiff's single sentence is part of the instructions in Appendix E, "Personnel Processing Actions," which "prescribes personnel processing actions for soldiers undergoing physical evaluation under the provisions of this regulation."  AReg. 635-40, ¶ E-1.  The appendix can assert some binding requirements within the disability system and on others such as units and installations.  See AR 635-40, ¶ E-5.  However, this single sentence does not alter the specific grant of authority to the USAPDA to make the "final decision" in disability determinations.  AReg. 635-40, ¶ 2-4f.  Additionally, there is no express authority or declaration, in this appendix or elsewhere, that this appendix elevates PERSCOM's or the PDB's authority above its ministerial duties to "issue orders or other instructions . . . based on the decisions of the

14

Commanding General, U.S. Army Physical Disability Agency" or elevates PERSCOM's or the PDB's authority relative to the USAPDA. AReg. 635-40, ¶ 2-3b. The disability regulation specifically lists those circumstances where the authority of the USAPDA is limited by law or authority of the Secretary of the Army or other administrative agencies. See, e.g., AReg. 635-40, ¶ 2-4f; 4-22g(4); 4-25; 4-26. Thus, the ABCMR properly interprets that Plaintiff's single sentence is not a limitation on the authority of the USAPDA but simply instructions for the carrying out the USAPDA's final decisions.

The "Final disposition instructions" paragraph is not a limit on the authority of the USAPDA because it simply lists specific actions that reflect the USAPDA's overall responsibilities, and explains how to process those actions:

> After final approval, forward [Department of the Army] orders or other disposition instructions to the proper commander for disposition . . .
>
> (e) Request for deviation from established discharge date or amendment or revocation of retirement orders *for other than medical reasons* will be submitted, with justification, to PERSCOM (TAPC-PDB). If the soldier is rehospitalized, and the presence of substantial new evidence indicates that the initial disability decision or percentage of disability should be changed. . . USAPDA will decide whether the case should be reconsidered by the PEB. USAPDA may request that PERSCOM cancel discharge instructions, or amend or revoke retirement orders.

AReg. 635-40, ¶ E-9e.[5]

---

[5]The "Final disposition instructions" paragraph, AReg. 635-40, ¶ E-9, lists additional procedures to fulfill the USAPDA's duty and obligation to operate the physical disability system. Id. at ¶ 2-4. Essentially, the USAPDA must take such steps as necessary to attain the final disposition of a case that has completed disability processing by forwarding it to PERSCOM for disposition. AReg. 635-40, ¶ 4-22g. The "Final disposition instructions" paragraph, AReg. 635-40, ¶ E-9, lists additional procedures to fulfill PERSCOM's duty and obligation to operate the physical disability system, but PERSCOM's duties are merely administrative. Id. ¶ 2-3b. Therefore, upon receiving a case forwarded by the USAPDA and "[b]ased on the *final decision*

The ABCMR properly rejected Plaintiff's 'single sentence' argument and found that Plaintiff's case was properly recalled and authority revoked.  (AR 38, ¶ 3.)  Clearly, the "Final disposition instructions" paragraph, AReg. 635-40, ¶ E-9, does not change the authority of the USAPDA or PERSCOM within the disability system.  In Plaintiff's case, the ABCMR determined that the PDB, under the authority of orders from the USAPDA, issued the valid revocation of the authorization instructions, making Plaintiff's first attempted discharge invalid (AR 39, ¶ 4).  Thus, the ABCMR properly dismissed Plaintiff's meritless arguments claiming that an entity other than USAPDA or the PEB had to give authority for the recall and reconsideration.  (AR 38, ¶ 3.)[6]

_____

*of the USAPDA* . . . PERSCOM *will* issue retirement orders or other disposition instructions . . . [including] (4) Separation for physical disability without severance pay."  AReg. 635-40, ¶ 4-24b(4) (emphasis added).

[6]    The "final instructions paragraph" permits anyone, including the soldier or his commander, to submit a request to the Physical Disability Branch of PERSCOM for change of dates or cancellation of the orders based on non-medical reasons.  See AReg. 635-40, ¶ E-9e.  Conversely, if there are non-medical or medical reasons to change the disability or discharge, the PDB cannot act on existing orders until informed to do so by the USAPDA.  AReg. 635-40, ¶¶ 2-3b, 2-4f, E-9e.  In this case, the Judge Advocate General's Corps contacted the USAPDA about Plaintiff's discharge to confirm the accuracy of the disability determination (AR 269).  Subsequently, rather than making a decision on its own, USAPDA asked the PEB to reconsider, which it did, resulting in a determination of "fit for duty."  (AR 12, ¶ 10, AR 37, ¶ 3.)  The only prejudice or harm Plaintiff suffered was not being able to shirk his service obligation because the PEB's reconsideration only reviewed evidence favorable to Plaintiff regarding his duty performance.  (AR 239-240; 922-923, 924-925.)  If this Court finds that appendix is an implicit limitation on the authority of the USAPDA, the actions of the USAPDA in Plaintiff's case are not in violation of the regulation because the USAPDA's responsibilities include "[i]nterpreting and implementing policies coming from higher authority."  AReg. 635-40, ¶ 2-4a.  Therefore, the USAPDA's order to the PERSCOM-PDB personnel to revoke and recall Plaintiff's case is a permissible interpretation in light of the regulation's specific grant of interpretation authority.  Id.

16

The ABCMR correctly interpreted the disability regulation which is consistent with the text of the entirety of the regulation. The ABCMR properly concluded that the final decision authority with respect to disability discharge determinations remains with the USAPDA and that PERSCOM, and the PERSCOM-PDB simply performed ministerial duties. (AR 38, ¶ 1-3)

5. Plaintiff's Disability Discharge Was Lawfully Revoked By The Physical Disability System.

Plaintiff continues to assert an erroneous argument that the PEB decisions are final agency actions (Pl. Br. at pt. II-IV). The PEB initially considers the soldier's case informally by reviewing the MEB results and all of the soldier's medical and *personnel records*. AReg 635-40, ¶ 4-20a. After its review, the informal PEB makes its findings and recommendation. AReg 635-40, ¶ 4-20b. If the informal PEB determines that the soldier is "unfit for duty" and should be separated or retired for the disability, he may accept the findings and recommendation of the informal PEB or demand a formal PEB. AReg 635-40, ¶ 4-20c. If the informal board determines that the soldier is "fit for duty," the soldier's **only option** to challenge that determination is to submit a written rebuttal to the board within 10 days from receipt of its findings. DoDI 1332.38, ¶ C3a(2) (emphasis added).

The PEB then forwards the case with its findings and recommendation to the USAPDA; and if the PEB has forwarded the case, but "additional medical evidence or an addendum to the (MEB) is received . . . and the PEB determines that such evidence would change any finding or recommendation, the case will be recalled by the PEB and a new DA Form 199 issued." AReg 635-40, ¶ 4-20f(2). The USAPDA reviews or approves the results as required, and has the authority to modify the PEB findings and recommendation to correct any errors. AReg 635-40, ¶¶ 4-22c,d, 4-24b. The USAPDA ensures final disposition on the case to include issuing

authority for discharge orders until such time as the final action, actual separation from the service, occurs in a soldier's case. Id. at ¶¶ 4-22, 4-24.

The ABCMR specifically found that Plaintiff knew that the PEB #2 decision would likely be approved (AR 39, ¶ 5); but more importantly, Plaintiff had specific knowledge that the findings of PEB #1 were under reconsideration (AR 39, ¶ 6). Thus, the PEB #1 findings were no longer final for multiple reasons such that Plaintiff's act of presenting himself to the Transition Center for the specific purpose of obtaining a discharge is a knowing misrepresentation as to his eligibility for separation (AR 39, ¶ 6). The ABCMR specifically found that Plaintiff reported to the Transition Center in compliance with facially valid orders (AR 39, ¶ 6). However, by not disclosing to the Transition Center personnel that there was a second PEB that had already rendered findings, even if it was not final, was a deliberate omission of his eligibility for separation (AR 39, ¶ 6).

It is important to note that Plaintiff followed the guidance and advice of his Physical Evaluation Board Liaison Officer ("PEBLO") throughout the entire discharge process (AR 861-863) and attempts to rely on her comments prior to the existence of PEB #2 as evidence that PEB #1 was final (Pl. Br. 56, ¶ 27). However, he disregarded her advice on the administrative consequences of the findings of PEB #2 (AR 406-407; AR 451). The PEBLO is a designated subject matter expert on the physical disability system, even though she is not an "experienced counsel" like Plaintiff's counsel (Pl. Br. 41) because she has particularized knowledge and experience with the physical disability system. See AReg. 635-40, Appendix C. On 5 September 2001, the PEBLO told him that his case was on hold and he had ten days to respond (Pl. Br. 63, ¶ 73). Plaintiff was initially told to submit his rebuttal by 14 September 2001 but he

18

negotiated an extension beyond this date so that his rebuttal would not be due, and thus not be

expected by the PEBLO, until after Plaintiff's discharge date as reflected on the order he had in

hand.  (AR 98-99.)

    The ABCMR specifically found that Plaintiff's deliberately ignored the PEBLO's

directions and the regulation that his case was on hold when he continued to out-process and

conceal his knowledge of the existence of PEB #2 from the Transition Center (AR 39, ¶¶ 5-6).

Additionally, the record contains direct and circumstantial evidence which demonstrates the

significance of Plaintiff's negotiating with the PEBLO for an extra day in order to submit his

rebuttal to the PEB #2 on 17 September 2001.  This active request for a delay is an example of

the evidence of his intent to take whatever steps necessary to shirk his duties and service

obligation (AR 1916-1917).  On 13 September 2001, Plaintiff's counsel mailed a letter of

rebuttal to the president of the PEB (AR 312-313; Pl. Br. 42, 41), instead of presenting this letter

of rebuttal directly to the PEBLO.  The letter was ostensibly "submitted"as rebuttal, but

Plaintiff's decision to correspond directly with the PEB, was contrary to his past practice of

working through the PEBLO, his designated ombudsman, as he had done on every other

occasion in the disability evaluation process.  (Pl Br. 41)  The ABCMR found that Plaintiff

"misled the PEBLO" (AR 39, ¶ 4).  Rather than work with his PEBLO, Plaintiff intentionally

deceived her by his deliberate omission of not providing the rebuttal to the PEBLO.  In fact,

Plaintiff did not even inform her of his actions on 13 September 2001 wherein his counsel from

the New England area placed the rebuttal letter (AR 312-313) in the mail to the PEB in Texas.

The PEB president considered Plaintiff's rebuttal but did not change the findings (AR 387).

6.  The USAPDA Recall Of Authorization Properly Revoked Plaintiff's Discharge Orders.

19

The disability regulation required the USAPDA to recall the authorization to discharge Plaintiff once his case was being reconsidered.  "Do not separate the soldier from the service before notice is received of the final decision from HQDA."  AReg. 635-40, ¶ E-5.  Additionally, the installation could not lawfully separate Plaintiff because the findings by the second PEB which found him fit for duty (AR 100), Plaintiff nonconcurred with that finding (AR 101), and the final disposition of his case was not complete.  The disability regulation specifically states that "[a]fter PEB proceedings have been completed, the soldier's disposition will be according to the recommended findings of the board as indicated in (a) and (b) below."  Id. at E–5.  The disability regulation also states:

> The MTF [medical treatment facility] commander will process the soldier according to [Army Regulation] 40-3 if the soldier concurs in the findings.  If the soldier *does not concur* with the PEB's findings of fit . . .the MTF commander will retain the soldier under control, pending final action on the case at [headquarters department of the Army]. . . . If the soldier is an outpatient, he or she will remain assigned to his or her parent organization pending final action on the case.

AReg. 635-40, ¶ E-5a.  As such, Plaintiff remained assigned to TDS at USALSA.

The administrative control of Plaintiff was never transferred to the Transition Center such that the Plaintiff did not have a duty to comply with the orders even if he had not received a copy of the revocation orders.  The Article 32 Officer concluded that Plaintiff's appearance at the Transition Center was in compliance with a duty to report based on the contents of the separation orders (AR 113, ¶ 4, note 32).  The ABCMR reconciled the contrary findings of the Article 32 report, by finding that USAPDA authorization for the orders was lawfully revoked by voice, TRANSPOC, and fax to the Fort Benning Transition Center prior to Plaintiff's attempted separation (AR 38, ¶ 3; AR 40, ¶ 7; AR 269, 272, 275, 444, 452-453, 519, 811, 947, 948).

20

7.  Reconsideration Of PEB #1 Suspended Plaintiff's Discharge Orders In The Absence Of A
Written Revocation Of The Orders.

   The ABCMR properly determined that the reconsideration by the PEB suspended the

final disposition of the PEB #1 (AR 39, ¶ 4; AR 520, 1683-1733).  Reconsideration renders the

underlying decision incomplete and non-final.  See Stone v. INS, 514 U.S. 386, 392 (1995).

Concomitantly, the act of reconsideration also renders the initial separation orders null and void

because there no longer exists a final disposition of Plaintiff's disability evaluation and the

underlying authority for the orders no longer existed.  It necessarily follows that when a matter is

under reconsideration there can also be no "final agency action" until the reconsideration is

complete.  "[P]endency of reconsideration renders the underlying decision not yet final."  Stone,

514 U.S. at 392; Sendra Corp. v. Magaw, 111 F.3d, 162, 166 (D.C. Cir. 1997).  The disability

regulation specifically states that "[b]efore final action on a case, the proceedings of a properly

constituted PEB may be returned to the same board for reconsideration of findings, correction of

errors, or other reasons."  AReg. 635-40, ¶ 4-19p(1).  Prior to the PEB's recall, the final

disposition in Plaintiff's case had occurred; however, he was still in the service such that final

action was not complete.  For example, the USAPDA can revise orders to continue soldiers on

active duty after final disposition of the case when that soldier should be discharged and this

authority exists until the soldier is actually separated.  See AReg. 635-40, chapter 6.  Upon recall

by the PEB president, Plaintiff's case was no longer in a "final disposition" status because it was

being recalled based on information from the USAPDA that the PEB was not provided accurate

performance data on the Plaintiff.

8.  The ABCMR Properly Determined The Issuance Of PEB #2 Findings Invalidated PEB #1.

The ABCMR lawfully concluded that "[t]he fact that the [Plaintiff's] case was being reconsidered . . . obviated the first PEB proceedings" (AR 39, ¶ 4). Setting aside that PEB #1 was invalid because of fraud and error, the discharge orders were simply no longer valid because they were based on PEB #1, and by issuing the PEB #2 findings, PEB #1 became a nullity. The disability regulation plainly states that "[s]houd the PEB reconsider the case and change its findings or recommendations, a new DA Form 199 will be prepared and referred to the soldier for his election." AReg. 635-40, ¶ 4-19p(1). Consequently, "[w]hen new findings are made by the PEB, they become the *only findings* on which later action will be taken." Id. (emphasis added). The PEB reconsidered Plaintiff's findings based on the correct performance evaluation data and a correct commander's letter on potential for performance of JAG duties and found him "fit" for duty, and prepared a new DA Form 199. (AR 100-101.) As such, only PEB #2 could be used as a basis for any action on Plaintiff's disability determinations. AReg. 635-40, ¶ 4-19p(1). The Plaintiff could challenge the findings before the PEB or even appeal them to the ABCMR. See AReg. 635-40, ¶¶ 2-11; 2-12; 2-13; 4-20e(6); 4-21; 4-25; 4-26.

Nevertheless, the *mere existence* of the new DA Form 199 precluded PEB #1 from serving as the basis for Plaintiff's discharge orders. Therefore, Plaintiff could not be discharged by the Transition Center because the disability regulation mandates administrative control of soldiers in the PEB process. Specifically, paragraph E-4, titled "Administrative control of soldiers before final PEB action," states that "Soldiers processed as outpatients *will remain available* to the MTF commander or *president of the PEB* until the PEB completes action in his or her case." AReg. 635-40, ¶ E-4a. The ABCMR properly reviewed the evidence in the record and the governing regulation when concluding that: the USAPDA recalled the authorization; the

reconsideration of PEB #1 was authorized; PEB #1 was no longer a valid decision or authority; and PEB #2 is the valid final disposition of Plaintiff's status, such that the Plaintiff was subject to military authority (AR 38, ¶ 3; AR 39, ¶ 4; AR 40; ¶ 7).

9.  The Initial Disability Evaluation By The MMRB Was Invalid Or Tainted By Plaintiff's Fraud.  Plaintiff claims that the ABCMR decision is invalid because the Article 32, UCMJ, Investigating Officer made a recommendation that the charge of fraudulent separation was not supported (Pl. Br. 9; AR 734-742).  However, Plaintiff most certainly committed multiple acts of fraud because Plaintiff's "conduct and actions leading up to his separation were duplicitous" (AR 39, ¶ 5) to include actions that led to his initial entry into the disability system. (Pl. Br. 39, n. 31; AR 16, ¶ 15d).  The entire scope of Plaintiff's conduct, beginning from the moment he began to solicit medical opinions from non-military physicians for disability recommendations (AR 479-491) is relevant in the ABCMR's evaluation of the Army's subsequent Article 3(b), UCMJ prosecution (AR 39, ¶ 5).  Plaintiff asserts that the underlying defects in the MMRB is a red herring (Pl. Oppn. 33) but the ABCMR considered the evidence in the record and found that Plaintiff's acts created invalid or erroneous disability proceedings that were properly reconsidered.  The ABCMR properly found that Plaintiff "orchestrated his separation throughout the MMRB, MEB, and PEB proceedings, taking pains to ensure that the processing for his discharge was kept as secret as possible, and in fact, misleading personnel about his intentions." (AR 39, ¶ 5).  Procedurally, it is undisputed that the MOS Medical Retention Board ("MMRB") did not have a member of the Judge Advocate General's Corps as required by AReg. 600-60, ¶ 3-2e.  The federal district court found that the "MMRB was void since Army Regulation 600-60, ¶ 3-2(e) requires that a member of the JAG Corps, senior in grade to Plaintiff, be a voting

member of the MMRB." (AR 610 at note 15). The USAPDA also determined that the MMRB

was invalid because it did not contain a Judge Advocate member. (AR 267, 947-948.) As

indicated by the governing regulation, "[t]he overriding consideration by the MMRB is if the

solider possesses the physical ability to perform [Primary Military Occupational Speciality] or

specialty code assignments worldwide under field conditions." AReg. 600-60, ¶ 2-1b. Thus, the

Judge Advocate member would have particularized knowledge to assist the MMRB in making its

determination to avoid situations exactly like the facts of this case of an unwarranted MMRB

recommendation based on misleading performance information.

Additionally, the MMRB did not have the required evaluation from Plaintiff's actual

commander. The MMRB requires in all cases that the unit commander "will write an evaluation

of the soldier's physical capability and the impact the limitations of the permanent profile have

on the full range of PMOS or specialty code duties." Id. at ¶ 3-3c. The accuracy of this

evaluation is central to the MMRB process, and the regulation states "[t]he soldier's physical

ability and limitations will be fully considered in the board's decision. The board will *fully*

*consider the unit commander's evaluation*, the soldier's own statement, any facts presented by

individuals that appear before the board, and other information prior to reaching a decision." Id.

at ¶ 3-3d(7) (emphasis added). In Plaintiff's case, he not only wrote his own statement (AR

476), Plaintiff also wrote (AR 408) the unit commander's evaluation used in the MMRB (AR

477-478). Clearly, the evaluation crafted by Plaintiff was deliberately misleading. Plaintiff's

unit commander was not Captain Smith (AR 408) but was the Judge Advocate Commander of

the United States Army Legal Services Agency (AR 865). This fact is specifically determined

by the federal district court, noting "Plaintiff was *assigned* as a defense counsel to the U.S. Army

24

Trial Defense Service (TDS) in Falls Church, Virginia with duty at Fort Benning, Georgia."
(AR 611) (footnote omitted).

The federal district court specifically concluded as a matter of law that, "[t]he Army has presented evidence that Plaintiff fraudulently secured his discharge [1] by the means by which he was found "unfit," as well as evidence of [2] Plaintiff's actions between June 2 and September 14 that may have resulted in others not inquiring into whether his discharge had been revoked." (AR 620.) The court also concluded that the evidence showed "[w]hen Plaintiff went before the MMRB and MEB he submitted a letter from Captain Smith but not a letter from anyone in TDS." (AR 620.) This finding, while relevant to the Plaintiff's fraudulent misconduct, is also relevant in demonstrating that the MMRB, MEB, and PEB #1 were void because Plaintiff's actual commander, or his designee, did not provide the required evaluation of Plaintiff's performance.

If Plaintiff had not obtained an invalid MMRB evaluation, he would not have been referred to an MEB, because the MMRB was the basis for Plaintiff's referral to an MEB (AR 492-495). Plaintiff asked the MMRB to refer him to an MEB (AR 476) and Plaintiff prepared the misleading commander's evaluation (AR 477-478). When this letter is compared with Plaintiff's OER's for the same time period, the fraudulent taint is readily apparent. (AR 922-925). Plaintiff is wrong in claiming that his disability discharge orders (Pl Br. 7, n. 4) and procurement of a discharge certificate (Pl. Br. 8, n. 10) were not tainted by fraud.

10.   The Initial Army Physical Disability Evaluation Was Invalid And Tainted By Fraud.

Plaintiff's cross-motion completely misstates the facts in the record by asserting that Plaintiff's first disability finding was not tainted by fraud (Pl. Br. 7, n.4).  The ABCMR makes no statements that can even remotely suggest that the PEB #1 proceedings were not tainted by fraud.  More importantly, review of the regulation and record evidence present clear evidence of Plaintiff's fraudulent and misleading acts during the MEB.

The Army Physical Disability Evaluation System consists of several steps, including a MEB and PEB. AReg 635-40, ¶¶ 4-9, 4-10.  The MEB and PEB "perform somewhat different functions:  the MEB diagnoses the servicemember's medical status according to the retention standards in Army Regulation 40-501, but does not pass upon whether the condition makes the member physically unfit for service."   Wielkoszewski v. Harvey, 398 F. Supp. 2d 102, 107-108, n. 3 (D.D.C. 2005).  The MEB must obtain a statement from the unit commander of the soldier "describing the soldier's current duty performance" that addresses:

> (1) The soldier's most recent performance of duty.
>
> (2) Any special limitation of duty due to the soldier's physical condition.
>
> (3) The soldier's ability to adequately perform the duties normally expected of an individual of the soldier's office, grade, rank, or rating.
>
> (4) The soldier's current duty assignment, anticipated future assignments, branch, age, and career specialties.

AReg. 635-40, ¶4-15e(1)-(4).  The unit commander is the "commander of the organization to which the soldier is assigned."  Id. ¶ E-3.   It is beyond debate that the commander for purposes of the disability system, was not Captain Smith (AR 408) but was the Commander of the United

States Army Legal Services Agency (AR 865); and this fact was specifically determined by the federal district court. (AR 611.)[7]

Plaintiff crafted the commander's evaluation letter and took pains to make the letter as misleading as possible in light of his actual performance and abilities.[8] The commander's letter is essential in the MEB proceedings because MEB's "are convened to document a soldier's medical status and duty limitations insofar as *duty is affected* by the soldier's status." AReg. 635-40, ¶ 4-10 (emphasis added). The MEB makes a decision "as to the soldier's medical qualification for retention based on the criteria in [Army Regulation 40-501, chapter 3." Id. The Plaintiff crafted the improper and unsubstantiated commander's evaluation which is deliberately counter to Plaintiff's actual performance capability as seen in his evaluation reports submitted to the PEB during the reconsideration (AR 922-925). Of note, during the time of Plaintiff's claimed physical inability to perform as a JAG, his officer evaluation specifically notes that he is physically fit. (AR 920-921.) The commander's evaluation is properly seen as performance data, however, because of the MEB diagnosis, this so-called evaluation is *the* reason he is given

---

[7] As a further example to show who was the proper commander for the disability system, after final disposition of a case, the USAPDA must send "orders or other disposition instructions to the proper commander for final disposition." Id. at ¶ E-9. The USAPDA sent the disposition instructions or "authorization" code to the Adjutant General at Fort Benning, where the Plaintiff was attached, and the Adjutant General prepared Plaintiff's discharge orders. (AR 98-99.) Although Captain Smith's local unit would receive a courtesy copy of the orders, the regulation required that the discharge orders be sent to Plaintiff's proper unit commander. The Army, in the form of the Personnel Command ("PERSCOM"), the USAPDA, and the installation Adjutant General, clearly consider that Plaintiff's unit commander to be the Judge Advocate Commander of USALSA. As such, the distribution information on Plaintiff's discharge orders show that a copy was sent to the "Cdr USA Trial Defense Serv." (AR 99.)

[8] The evaluation prepared for the MEB does not appear in the Administrative Record nor in Plaintiff's supplements to the administrative record.

a disability evaluation.  (AR 500.)  Plaintiff is not diagnosed with any sort of leg or lower

extremity disability.  See AReg. 40-501, ¶¶ 3-13, 3-14.  Instead, Plaintiff's medical disability is

found under the "General and miscellaneous conditions and defects" section of the regulation.

Id. ¶ 3-41.  Plaintiff is diagnosed with a "miscellaneous" condition and referred to a PEB

because the doctor finds that Plaintiff's condition will "result in interference with satisfactory

performance of duty **as substantiated by the individual's commander or supervisor**."  Id. at

3-41e(1) (emphasis added).

        The MEB is not a formal hearing, therefore the disability regulation notes that the

Narrative Summary ("NARSUM") prepared by the evaluating physicians "is the heart of the

disability evaluation system.  Incomplete, *inaccurate, misleading*, or delayed NARSUMs may

result in injustice to the soldier *or to the Army*."  AReg. 635-40, ¶ 4-11 (emphasis added).

Further guidance on the NARSUM includes that "[a] correlation must be established between the

soldier's medical defects and physical capabilities."  Id. ¶ 4-11c.  Plaintiff's physician noted that

Plaintiff "ambulates without a limp," has "full range of motion," the sites were he had knee

surgery "are well healed," and that "[t]here is no laxity . . . no instability . . . [but] [h]e does have

some tenderness."  (AR 499, Physical Examination.)  The physician also noted that "X-rays of

both knees have been obtained and were also normal . . . [h]e is not currently taking any

medication . . . [and] [h]is pain is rated at slight and occasional."  (AR 500.)  Given the lack of

any diagnosable medical problems with Plaintiff's knees that would justify any other

classification, the physician's recommendation was "[t]his patient does not meet the physical

standards for retention [under the provisions of] Paragraph 41(e)(1), Chapter 3, [AReg.] 40-501.

Recommend that this case be referred to the [PEB] for disposition."  (AR 500.)

Thus, the evidence of fraud in the procurement of Plaintiff's attempted discharge exists from the very beginning of the evaluation process by the manner and means by which he obtained the medical determinations. By crafting the misleading commander's evaluation letters, Plaintiff was able to mislead those persons charged with evaluating his condition. The ABCMR did not elaborate on Plaintiff's fraud with respect to the fraudulent nature of the commander's letters but did note similar evidence of fraud regarding Plaintiff's actions to keep his continuing efforts to seek a disability discharge (AR 39, ¶¶ 4-5).

**B.  The ABCMR Properly Determined Article 3(b), UCMJ, Jurisdiction Is Constitutional.**

Plaintiff's memoranda fail (Pl. Br. 41-49; Pl. Oppn. 42) to support his bare allegation that the ABCMR's determination was arbitrary and capricious. The ABCMR determined that the Army properly had continuing jurisdiction under Article 2, UCMJ, or that the Army properly exerted fraudulent discharge jurisdiction under Article 3(b), UCMJ (AR 40, ¶ 9). The ABCMR's decision that Article 3(b), UCMJ is constitutional on its face and as applied to Plaintiff (AR 42, ¶ 14) is supported by the record, and the law. As a threshold matter, Plaintiff presents no legal or regulatory requirement that conviction by court-martial is a prerequisite to invalidate a fraudulent discharge, nor that failure to convict Plaintiff somehow retroactively deprives the Army of jurisdiction. Plaintiff lacks standing here to challenge Article 3(b), UCMJ.

1.  The ABCMR Properly Determined Article 3(b), UCMJ, Is Constitutional On Its Face.

Plaintiff incorrectly argues that the ABCMR gave "short-shrift" to his constitutional claims, presumably because the ABCMR did not write as much as Plaintiff wanted. (Pl. Oppn. 45.) However, the ABCMR fully considered Plaintiff's claim that Article 3(b), UCMJ is

unconstitutional on its face (AR 4, ¶ 2; AR 7, ¶ 4a; AR 9-10, ¶¶ 5-8b) and rejected it on its

merits.  (AR 42.)  The ABCMR reviewed the substantial amounts of items and information

Plaintiff submitted.  (AR 11-33,  ¶¶ 1-53.)  The ABCMR also considered the relevant portions of

the UCMJ and the applicable provisions of the Army disability and personnel regulations.  (AR

33-37, ¶¶ 55-76.)  The ABCMR thoroughly considered Plaintiff's evidence, including the Article

32, UCMJ, report and hearing.  (AR 19, ¶ 23.)  The ABCMR not only reviewed the items he

submitted but also conducted its own independent analysis of the Article 32, UCMJ, hearing and

extracted the most relevant evidence regarding the claims in his application.  (AR 24, ¶ 25.)  The

ABCMR considered motions by Plaintiff's counsel filed during the prior court-martial

proceedings regarding Article 3(b), UCMJ.  (AR 7, ¶ 4a; AR 9, ¶ 5-6; AR 10, ¶ 8a-b; AR 26 ¶

27.)  In denying relief, the ABCMR noted that its conclusion was consistent with case law from

the CAAF, and with case law cited in the decision of the Federal District Court.  (AR 619-621.)

2.  The ABCMR Properly Determined Article 3(b), UMCJ, Was Constitutionally Applied.

        The ABCMR also considered Plaintiff's claim that Article 3(b), UCMJ, is

unconstitutional as applied to Plaintiff and rejected it on its merits.  (AR 42.)  As noted directly

above, the ABCMR's decision is supported by substantial evidence in the record and is

consistent with long-standing precedent and the decisions of both federal civilian courts and

federal military courts.  In reviewing the entirety of Plaintiff's application, the ABCMR

considered the legal proceedings and Plaintiff's motions alleging Article 3(b), UCMJ, is

unconstitutional.  (AR 26, ¶ 27.)[9]

------------------------------------------------------------

        [9] The ABCMR determined that Plaintiff submitted to the jurisdiction of the Army and "was
not a civilian, but a Soldier under the Army's jurisdiction [and] h[e] himself apparently felt that

The ABCMR reviewed the issue as noted above and its general conclusion on the constitutionality of Article 3(b), UCMJ, is a rational denial of an "as applied" challenge because it is consistent with case law from the CAAF, <u>Wickham v. Hall</u>, 12 M.J. 145 (C.M.A. 1981), and case law cited in the decision of the Federal District Court.  (AR 619-621.)

<u>3.  Plaintiff Lacks Standing To Challenge The Constitutionality Of Article 3(b), UCMJ</u>.

Plaintiff's memoranda continue to raise non-APA claims (Pl. Br. 34, 45, 47) that are prohibited as presented in Defendant's Motion for Summary Judgment (R.10) for failure to plead and prove a waiver of sovereign immunity, and because Plaintiff lacks standing to challenge to Article 3(b), UCMJ, as unconstitutional because he is no longer a servicemember.  (R. 31.)  Any relief that is available to Plaintiff is not contingent upon a determination that Article 3(b), UCMJ, is unconstitutional on its face because he is no longer subject to its jurisdiction because he voluntarily resigned.  <u>See, e.g.</u>, <u>Miller v. Roche</u>, 2006 U.S. Dist. LEXIS 7705 (D.D.C. 2006) (where a court can issue no order in plaintiff's favor that would redress his alleged injury, he lacks standing to pursue that claim).  As a former officer whose voluntarily resignation was approved by the Secretary of the Army, Plaintiff is no longer subject to UCMJ jurisdiction.  An order from the Court declaring Article 3(b), UCMJ, as unconstitutional would not grant any

---

way."  (AR 40, ¶ 9.)  Plaintiff asserts that he persistently objected to the Army's exercise of jurisdiction over Plaintiff by declaring himself a civilian in the documents he signed, by not obtaining a new military identification card, and similar such ancillary actions.  (Pl. Oppn. 26-30.)  However, the ABCMR considered that the Plaintiff accepted military pay and allowances and performed duties as a legal assistance attorney after 14 September 2001 until his discharge.  (AR 40, ¶ 9.)  Furthermore, the ABCMR's overall decision regarding the constitutionality of Article 3(b), UCMJ, jurisdiction is supported by similar determinations by the ACCA (AR 2206) and the CAAF (AR 2107; 2283) that rejected Plaintiff's petitions for writ of habeas corpus and other relief under these facts.

apparent remedy to Plaintiff because he is no longer subject to the UCMJ. "Federal courts lack

jurisdiction to decide moot cases because their constitutional authority extends only to actual

cases or controversies." Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70 (1983) (citation

omitted); see U.S. Const. Art. III, § 2, cl. 1. It is well established that "federal courts are without

power to decide questions that cannot affect the rights of litigants in the case before them."

Evangelical Lutheran Church v. INS, 288 F. Supp. 2d 32, 50 (D.D.C. 2003).

Finally, because the gravamen of Plaintiff's case is the challenge to the ABCMR's

decision, judicial restraint requires this Court to avoid addressing this hypothetical facial

challenge by a former servicemember. As the Supreme Court has consistently stated, a plaintiff

can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under

which the Act would be valid," *i.e.*, that the law is unconstitutional in all of its applications.

United States v. Salerno, 481 U.S. 739, 745 (1987). "While some Members of the Court have

criticized the *Salerno* formulation, all agree that a facial challenge must fail where the statute has

a 'plainly legitimate sweep.'" Washington State Grange v. Washington State Republican Party,

et al., 2008 U.S. LEXIS 2707 * (Mar. 18, 2008) (citations omitted). Article 3(b), UCMJ,

survives under either standard. The power to exercise court-martial jurisdiction is a matter

governed entirely by statute. United States v. Reid, 46 M.J. 236, 238 (CAAF 1997). Because the

issuance of a lawful discharge "normally terminates the constitutional and statutory power of a

court-martial to try [a] person, even for offenses allegedly committed prior to the discharge,"

Congress enacted Article 3(b) to unequivocally establish continuing court-martial jurisdiction

over those who procure discharges by fraud. Id.; Wickham v. Hall, 706 F.2d 713, 715-16 (5th

Cir. 1983). More importantly, in determining whether a law is facially invalid, a court must be

careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases.  See United States v. Raines, 362 U.S. 17, 22 (1960).  Facial challenges are disfavored for several reasons, including that they "run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'"  Washington State Grange, 2008 U.S. LEXIS 2707* (quoting Ashwander v. TVA, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (internal citations omitted).[10]

Consequently, under the APA, the Defendant is entitled to summary judgment on this issue because the ABCMR considered Plaintiff's claim, the evidence in the record, and used a rational decision-making process in denying Plaintiff's application.  Kreis, 866 F. 2d at 1511.

## C.  The ABCMR Properly Determined The Army Retained Jurisdiction Over Plaintiff.

Plaintiff makes untenable arguments that the first attempted discharge is valid and the final discharge is invalid because the Army could no longer exercise jurisdiction.  (Pl. Br. 7 -34.) The ABCMR carefully considered, but denied, Plaintiff's claim that he was discharged on September 14, 2001.  (AR 40, ¶ 7.)  The ABCMR determined that the Army effectively and

---

[10]    The Supreme Court cautions against deciding facial challenges because:

> [F]acial challenges threaten to short circuit the democratic process
> by preventing laws embodying the will of the people from being
> implemented in a manner consistent with the Constitution. We
> must keep in mind that '[a] ruling of unconstitutionality frustrates
> the intent of the elected representatives of the people.'

Washington State Grange, 2008 U.S. LEXIS 2707* (citations omitted).

lawfully exerted jurisdiction over Plaintiff until October 1, 2002.  (AR 2-42.)  The authority to

discharge Plaintiff was properly revoked from Fort Benning prior to 14 September 2001 because

the USAPDA revoked the authorization to issue disability separation orders.  (AR 39, ¶ 4.)[11]

Consequently, the ABCMR correctly concluded that Plaintiff was not validly discharged from

the Army, the Army retained jurisdiction over Plaintiff (AR 40, ¶ 7) and he remained subject to

UCMJ jurisdiction until approval of his resignation.  The ABCMR found that "[t]he Army's

actions in revoking his discharge orders and directing that he be returned to duty were justifiable,

and in view of his actions, the decision to prefer charges to a court-martial for violation of

Article 83 was justified."  (AR 40, ¶ 8.)

Plaintiff continues to assert that USAPDA did not and could not issue his orders because

USAPDA is not an orders issuing authority.  (Pl. Br. 17-24; Pl. Oppn. 13-16.)  The ABCMR

properly relied on the regulation, the directors of the disability system, and the Transition Center

personnel to determine that it is USAPDA, through PDB, that has the authority to direct the

issuance of discharge orders.  (AR 38, ¶ 1; see AR 138, 750, 757, 770, 772.)  While Fort

Benning physically produces the discharge orders and the DD 214, it is powerless to do so

without USAPDA approval.  (AR 38, ¶ 3; AR 110, 113, 123-24, 135, 772.)  The regulation and

the record conclusively establishes that USAPDA's removal of the separation code for Plaintiff

in the personnel computer system deprived Fort Benning of the authority to discharge Plaintiff.

(AR 749-50, 770, 807-09.)  Fort Benning's authority to discharge Plaintiff had been revoked at

---

[11] The federal district court also clearly resolved this factual issue when it found that
instructions to revoke the discharge were issued.  (AR 613-614.)

least one month before he presented himself to the transition point on September 14, 2001 to receive his invalid DD 214. (Id.)

The orders to discharge Plaintiff on September 14, 2001 were authorized by the PDB. (AR 750, 757.)  It was also the PDB, acting under the direction of USAPDA, that later revoked the authorization for the discharge orders.  (AR 750, 762, 769-70, 772.)  The revocation was entered into the personnel computer system a full month in advance of September 14, 2001.  (AR 022, 040, 110, 113, 750, 770.)  Once the revocation was entered into the personnel system, the installation, Fort Benning, no longer had authority to discharge Plaintiff.  (AR 772.)  While Fort Benning actually issued the orders, it did not have the authority to approve a medical discharge for Plaintiff.  (AR 442, 772.)  Only the PDB, based upon the decision of the USAPDA, had that authority.  (Id)  The ABCMR correctly found, that once the PERSCOM-PDB revoked the authorization, Fort Benning lost the authority to discharge Plaintiff and so the DD 214 it issued was a legal nullity. (AR 40, ¶ 7.)

The only reason Plaintiff received a DD214 was because he had a paper copy of his separation orders in his hand.  (AR 439-441.)  The discussion of his recent promotion with the Transition Center clerk, Ms. Hernandez, led to a change in the separation orders at the rank of Major.  (AR 439; 961.)  The resulting amendment orders entered by Ms. Hernandez changed the Plaintiff's separation code back to "JFL." (AR 14, ¶ 14d; AR 135.)   Thus, the ABCMR rationally concluded that if Plaintiff had not held himself out as eligible for separation after he knew the authorization was revoked, the JFL code would not have been entered and he would not have received a DD 214. (AR 39, ¶ 6.)

The ABCMR properly determined that Defendant consistently retained jurisdiction over Plaintiff because Plaintiff was never validly discharged when the authority for a disability separation was revoked or alternatively that the Army was proper in its exercise of jurisdiction under Article 3b because of Plaintiff's actions.  (AR 40 ¶¶ 7-8.)  The flaw in Plaintiff's case is the presumption that the Army may not revoke orders and authorizations when there is evidence of fraud or obvious error.  See Pl. Br. at 16-17.  Contrary to Plaintiff's assertions, such authority is specified in the regulations and is also inherent to protecting the integrity of the service as an essential aspect of maintaining good order and discipline.  AReg. 600-8-105; ¶ 2-21(e).

The Plaintiff's subsequent actions after notice of the reconsideration leads directly to the evidence supporting the determination of jurisdiction for fraudulent discharge.  The ABCMR found that the Plaintiff was given direct and constructive notice that the basis of his separation had been overturned (AR 39, ¶ 5).  Plaintiff deliberately concealed and misrepresented his eligibility for separation upon notice of the overturned PEB. (AR 39, ¶¶ 4-5).  Plaintiff's attempted separation was invalid and he was not released from active duty (AR 40, ¶ 7; AR 616).  Thus, the ABCMR determined that Plaintiff was subject to continuing jurisdiction of the military.  (AR 40, ¶ 7.)  Additionally, the ABCMR properly determined that Plaintiff's fraudulent actions in procuring his discharge paperwork provided an alternative basis for military jurisdiction under Article 3(b), UCMJ, if there was a legal determination that Plaintiff was discharged.  (AR 40, ¶ 8.)

Related to the above determinations, Plaintiff's assertion that he did not voluntarily submit to military authority (Pl. Oppn. 23-25) was considered by the ABCMR and rejected.  (AR 40, ¶ 9.)  Plaintiff also does not assert that the ABCMR failed to thoroughly consider his

assertions that his resignation was involuntary. (Pl. Oppn. 29.) These claims were specifically considered by the ABCMR and rejected. (AR 40, ¶ 8.) Plaintiff claims he did not submit to military authority (Pl. Oppn. 24-27), yet, as determined by the ABCMR, he performed duties as an Army attorney and received pay and benefits (AR 40, ¶ 9), and when challenging his GOMOR, Plaintiff relies on the letters of appreciation he received during that same period as evidence of his hard work as an Army attorney (AR 29, ¶ 39 at "note from a major general." AR 2851.) Also, Plaintiff's military defense counsel specifically concedes that Plaintiff was considering a settlement "whereby my client would *continue* on active duty as a judge advocate until August 2003." (AR 396-397, ¶ 6)(emphasis added). The ABCMR properly determined that Plaintiff's argument is logically and legally inconsistent regarding his submission to military authority. (AR 40, ¶ 9.)

Consequently, Plaintiff was subject to either continuing military jurisdiction or fraudulent discharge jurisdiction until his resignation in lieu of court-martial was approved. (AR 40, ¶¶ 8-9.) Consistent with these findings and conclusions of the federal court, the ABCMR determined that the military properly exercised jurisdiction over the Plaintiff, and further found that Plaintiff was not entitled to a disability discharge or other relief for these same reasons. (AR 41, ¶ 12; AR 42 ¶¶ 14-15.) Thus, for the reasons set forth above, and in our previously filed motion, summary judgment in favor of the Defendant is appropriate.

**D.     Plaintiff Concedes The ABCMR Properly Refused To Expunge Adverse Records.**

Plaintiff's opposition and cross-motion memoranda concede by silence the lawfulness of the ABCMR's refusal to expunge the adverse OER and GOMOR. Plaintiff utterly fails to rebut Defendant's assertion that Plaintiff did not identify any deficiencies in the ABCMR's decision-

making process and the denial of his request for removal of an adverse OER and GOMOR.

Additionally, Plaintiff's Cross Motion for Summary Judgment does not address his original

claims that the OER and GOMOR should be expunged from his record.   This Court should

affirm the lawful decision of the ABCMR to deny Plaintiff's request to expunge these adverse,

but much-deserved, records because the ABCMR meticulously and methodically evaluated these

claims.  Kreis, 866 F. 2d at 1511.

1.  The ABCMR Properly Denied Plaintiff's Request To Delete His Adverse OER.

Plaintiff does not support his allegation (Compl., at 49-51) that his adverse OER (AR

222-223) should be removed because the senior rater had a conflict of interest during the rating

period and because the OER was unreasonable and unjust.[12]  (AR 1042 ¶ 5.)  The ABCMR

thoroughly reviewed his claim.  (AR 11, ¶ 8e.)  The ABCMR considered the items he submitted

including the adverse OER (AR 29, ¶ 40; AR 222-223), the memorandum by Plaintiff's legal

counsel challenging the OER (AR 32, ¶ 49; AR 2847-2849), and the OER processing

---

[12]  Throughout this brief, Plaintiff's counsel takes liberties with the facts and regulations in order to generate confusion or elicit sympathy from the Court.  For example, before the ABCMR, Plaintiff alleged that the OER should be removed because the senior rater had a conflict-of-interest because Plaintiff was a trial defense attorney during the rating period and the senior rater was the staff judge advocate ("SJA") who is responsible for the administration of military justice.  (AR 11, ¶ 8e; AR 1042.)  In this case, Plaintiff asserts the conflict-of-interest existed because "it was Plaintiff's . . . *duty to oppose* the [SJA's] office on all criminal and disciplinary actions."  (Compl., at 47, ¶ 187d) (emphasis added).  Contrary to counsel's allegation, Plaintiff's duty as a trial defense attorney is not to blindly oppose the SJA but to comply with the rules of professional conduct and to zealously represent soldiers in courts-martial, administrative boards, and other proceedings.  See AReg. 27-10, *Military Justice*, ¶¶ 6-2, 6-3, 6-11; AReg. 27-26, *Rules of Professional Conduct for Lawyers*, ¶ 6.  Nevertheless, Plaintiff performed legal assistance duties during the rated time (AR 40, ¶ 10).

memorandum.  (AR 32, ¶ 49; AR 2846.)  Additionally, the ABCMR reviewed Army Regulation 623-105, which establishes the policies and procedures for OERs.  (AR 35, ¶¶ 62-64.)

The ABCMR considered the regulation provisions that address procedures for reports with negative remarks about the rated officer because Plaintiff's adverse OER (AR 222-223) was replete with such items.  (AR 35, ¶ 62.)  The ABMCR also considered the provision which notes that an OER "included in the official record of an officer is presumed to be *administratively correct*, to have been prepared by the *properly designated* rating officials, and to represent the considered opinion and *objective judgment* of the rating officials at the time of preparation." (AR 35, ¶ 63)(emphasis added).  Finally, the ABCMR noted the regulation provides that "to justify deletion or amendment of an OER under the regulation, the applicant must produce evidence that *clearly and convincingly* overcomes the presumptions referred to above and that action to correct an apparent material error or inaccuracy is warranted." (AR 35, ¶ 64.)

This Circuit has historically respected the ABCMR's interpretation and application of Army regulations that govern evaluations.  Musengo v. White, 286 F.3d 535 (D.C. Cir. 2002) (affirming ABCMR decision because board's reliance on applicable regulation is a reasonable basis for determining applicant failed to overcome the presumption of regularity).  The ABCMR in the instant case properly considered and interpreted, *inter alia*, Army Regulation 623-105, establishing the policies and procedures for the OER system.  (AR 35, ¶¶ 62-64).  The ABCMR concluded that no conflict of interest existed because Plaintiff was rated for his duties as a Legal Assistance attorney, not as a trial defense counsel.  (AR 41, ¶ 10.)  The ABCMR separately determined that there was no evidence in the record, and Plaintiff did not provide any "to show that the adverse OER was unreasonable and unjust."  Id.  The ABCMR concluded by stating that

"[h]is request to have this report deleted from his [official file] is not granted." Id.  The ABCMR

denied relief only after considering and reviewing Plaintiff's request and submissions.  The

ABCMR relied upon the proper Army Regulation which provides a reasonable basis for its

denial of relief and this Court should refuse to overturn the ABCMR's findings.  Musengo, 286

F.3d 535.

2.  The ABCMR Properly Denied Plaintiff's Request To Delete His Letter Of Reprimand.

        Plaintiff fails to support his bare allegation (Compl. 50-51) that the letter of reprimand

(AR 220-221) should be removed because it is arbitrary and capricious (AR 1043-1044).  Before

the ABCMR, Plaintiff asserted the GOMOR was improper because Plaintiff's military defense

counsel was misled into advising Plaintiff to submit his resignation because a GOMOR would

not be issued (AR 1043, ¶ 6a), and because the government improperly used the applicant's

November 2001 deposition transcript as supporting evidence because Plaintiff invoked his right

to remain silent (AR 1043, ¶ 6b).  The ABCMR reviewed his claims. (AR 11, ¶ 8f).  The

ABCMR considered:  the GOMOR (AR 30, ¶ 42; AR 220-221); the memorandum by Plaintiff's

military defense counsel asserting that a GOMOR would not be issued based on negotiations

with government trial counsel (AR 30, ¶ 43); the email by the government trial counsel which

took exception to the memorandum and stated that the content of the GOMOR was appropriate

(AR 30, ¶ 43);[13] the other memoranda from Plaintiff's counsel related to the processing of the

GOMOR (AR 30, ¶¶ 44-45); and the order to file the GOMOR in Plaintiff's official personnel

file (AR 31, ¶ 46; AR 392).  Additionally, the ABCMR reviewed Army Regulation 600–37,

_____

    [13]  A copy of the email does not appear in the Administrative Record or the supplements to
the Administrative Record.

which establishes the policies and procedures for official use and filing of unfavorable

information about a soldier, such as the GOMOR (AR 35-36, ¶¶ 65-66).

The ABCMR considered the unfavorable information regulation provisions that address

procedures for official filing of adverse documents because the GOMOR (AR 220-221) clearly

reflected that Plaintiff's personal and professional conduct failed to conform to the law,

regulations, and the ethical standards expected of officers and Judge Advocates.  (AR 35, ¶ 65.)

The ABMCR considered the provision which states that "once an official document has been

properly filed in the [Official Military Personnel Fiche ("OMPF")], it is presumed to be

*administratively correct* and to have been filed pursuant to the *objective decision* by competent

authority.  (AR 36, ¶ 66)(emphasis added).  The ABCMR noted that "the burden of proof rests

with the individual concerned to provide evidence of a *clear and convincing* nature that the

document is untrue or unjust, in whole or in part" to warrant removal from the official personnel

file.  Id. (emphasis added).  Additionally, the ABCMR also reviewed Army Regulation 600-8-

104, which governs policies and procedures for management of official personnel files and

records (AR 36, ¶ 67).  The ABCMR considered the provisions of this regulation which provides

"that administrative letters of reprimand will be filed in the performance portion of the OMPF

becomes a permanent part of that file."  Id.  The ABCMR also noted the regulation provision that

"[t]he document will not be removed from the OMPF or moved to another part of the OMPF

unless directed by the Army Board for the Correction of Military Records, or the DASEB

(Department of the Army Suitability Evaluation Board)."  Id.

There is no direct mention of the use and consideration of Plaintiff's deposition by the

government unless one extrapolates such use from the contents of the government trial counsel's

email (AR 2807) responding to the list prepared by Plaintiff's military defense counsel (AR 403-405, ¶ kk) who was attempting to index the supporting documents used in the preparation of the GOMOR.  Government counsel states, "I'm *not vouching* for the accuracy of the list you put together in your memo dated 7 June.  However, be assured that the documents served on the accused with his memorandum of reprimand are the documents being used in support of the reprimand."  (AR 2807.)  Plaintiff's military defense counsel speculates from its own interpretation of the government counsel's email and then crafts a GOMOR rebuttal alleging that the General Officer imposing the reprimand actually saw the deposition and improperly relied on it.  (AR 396, ¶ 6.)[14]

The ABCMR in the instant case properly considered and interpreted, *inter alia*, Army Regulation 600-37, which establishes policies and procedures for filing unfavorable information about an individual in official files (AR 35-36, ¶¶ 65-66); and Army Regulation 600-8-104, which establishes policies and procedures for the maintenance of official files and records. (AR 36, ¶ 67.)  The ABCMR concluded that Plaintiff "has not provided any evidence to show that the 3 June 2002 GOMOR . . . is unwarranted or unfair."  (AR 41, ¶ 11.)  The ABCMR specifically noted that the Plaintiff did not provide the ABCMR with the Plaintiff's deposition transcript after

---

[14] Plaintiff's deposition is only mentioned by the federal district court when discussing Plaintiff's failure to respond to the government investigation concerning Plaintiff after he attempted to be discharged from the Army.  (AR 616, note 12.)  The federal district court stated:

> He refused to verify the truthfulness of his complaint or his affidavit, which he submitted to this Court in support of his motion for injunctive relief.  He refused to answer questions that would have shed light on whether he fraudulently obtained his discharge, whether his discharge was void as a matter of law, and whether the orders granting discharge had been properly revoked.

Id. (internal citations omitted).

asserting the government committed material error by using it as supporting evidence for the GOMOR. (AR 41, ¶ 11; AR 1043, ¶ 6b.)  Despite this deliberate omission by Plaintiff, the ABCMR stated, "[i]t would appear that based on the information contained in the GOMOR, that there was more than sufficient evidence available elsewhere to draft the adverse GOMOR without using any prior statement or deposition made by the applicant."  (AR 41, ¶ 11.) Furthermore, the ABCMR specifically found that the "information contained in the GOMOR, in fact, is contained in these proceedings."  Id.

This point is significant because the Plaintiff's failure to provide the ABCMR with Plaintiff's deposition testimony demonstrates that all evidence of Plaintiff's misconduct as stated in the GOMOR already existed in these other materials in the record.  Plaintiff clearly did not object to any other information allegedly relied on by the General Officer who conducted the GOMOR proceedings.  Thus, this conclusion by the ABCMR that the other items in the record provided all the evidence necessary for a valid GOMOR is clear and convincing evidence that either the GOMOR was not based on the Plaintiff's deposition or that the deposition did not prejudice the Plaintiff.  The ABCMR concluded by stating that "[h]is request to have this document removed from his [official file] is not granted."  Id.

Plaintiff cannot demonstrate error or injustice in the preparation, review, and filing of the adverse records.  Plaintiff has not presented any evidence or argument that the ABCMR's decision was arbitrary or capricious.  As he has failed to meet his burdens, the Court should enter judgment in favor of Defendant on these claims because the ABCMR's refusal to expunge the adverse documents in Plaintiff's official personnel files is wholly proper.

## IV.  CONCLUSION

Plaintiff did not carry his burden to provide clear and convincing evidence to the ABCMR that his discharge, adverse evaluation and reprimand amount to error or injustice. Further, Plaintiff cannot establish that the ABCMR's decision was arbitrary or capricious. The ABCMR's determination is well reasoned and supported by the evidence. Plaintiff could not and did not overcome the "strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith. . . . This presumption 'includes those officers who are charged with rating the performance of other officers.'" Calloway v. Brownlee, 366 F. Supp. 2d 43, 54 (D.D.C. 2005) (citation omitted). The role of this Court is to "ensure that the agency 'examined the relevant data and articulated a satisfactory explanation for its action.'" Id. The ABCMR clearly examined the relevant data and provided the requisite explanation for its decision in a thorough and detailed manner.

Wherefore, Defendant respectfully requests that the Court grant Defendant's motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

Respectfully submitted,

/s_____

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s_____

Of Counsel                    LANNY J. ACOSTA, Jr.

44

MAJOR JOSHUA M. TOMAN                  Special Assistant United States Attorney

U.S. Army Legal Services Agency        Civil Division

Arlington, Virginia                    555 Fourth St., N.W.

                                       Washington, D.C. 20530

                                       202-353-9895

                                       Attorneys for Defendant