UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MALCOLM G. SCHAEFER, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>THE HONORABLE PETE GEREN, )<br>SECRETARY OF THE ARMY, )<br>)<br>    Defendant. ) | Civil Action No. 1:07-cv-01550 (RJL) |

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
RECONSIDER BASED UPON NEW FACTS

I. PLAINTIFF'S PAY-RELATED FORMS (15 PAGES)

Defendant finally clarifies what we have called its "waiver defense" by specifying:

> "Defendant does not assert any 'waiver defense' because Plaintiff's resignation
> does not preclude APA review of the ABCMR's denial of relief. Defendant
> only asserts that Plaintiff's resignation deprives him of standing to bring an
> other than APA review claim on these matters."

Def.'s Opp. Pl.'s Mot. Reconsideration Based Upon New Facts at 2. Even as to this narrower assertion of a waiver-based defense, Defendant's argument that "Plaintiff's Attempted Reservation of Rights is Irrelevant" is wrong. Where one party acquiesces to the other party's reservation of rights, there can be no waiver. *See, e.g., Diamond Serv. Co. v. Utica Mutual Ins. Co.*, 476 A.2d 648, 655-56 (D.C. 1984); *Athridge v. Aetna Cas. and Sur. Co.*, Slip Copy, Civil Action No. 96-2708, 2006 WL 2844690 (D.D.C. Sept 29, 2006). An effective reservation of rights "may not be disregarded." *Draft Systems, Inc. v. Alspach*, 756 F.2d 293, 296 (3rd Cir. 1985). Estoppel and waiver may not be inferred when a reservation of rights has been asserted. *Steadfast Ins. Co. v. Stroock & Stroock & Lavan LLP*, 277 F.Supp.2d 245, 254 (S.D.N.Y. 2003); *see also Southern Nuclear Operating Co. v. N.L.R.B.*, 524 F.3d 1350 (D.C. Cir. 2008)

(reservation of rights clause within collective bargaining agreement); *Balestracci v. NSTAR Elec. and Gas Corp.*, 449 F.3d 224, 233 (1st Cir. 2006) (reservation of rights in ERISA plan documents); *Roth v. Mutual Reserve Life Ins. Co.*, 162 F. 282, 287 (8th Cir. 1908) (words "without prejudice" sufficient to reserve rights); *St. Paul Mercury Ins. Co. v. Ralee Engineering Co.*, 804 F.2d 520, 522 (9th Cir. 1986) (finding an adequate reservation of rights).

Evidence of Plaintiff's reservation of rights, *already in the record*, *see, e.g.*, (AR 2812, 2218-31, 2109, 2115, 2145, 2289, 2845), *should have been* enough to show that Plaintiff never abandoned his position -- that discharge #1 was valid and irrevocable. There is not one shred of evidence in the entire record that Plaintiff, after discharge #1, "apparently felt that way [that he was not a civilian but a Soldier in the Army]" because "[h]e complied with instructions to return to duty … served as an Army attorney for approximately a year … apparently drawing pay and allowances." (AR 40 ¶ 9.) Yet, upon those grounds, the ABCMR drew the conclusion Plaintiff voluntarily submitted himself to military control. It assumed and inferred voluntary receipt of pay without checking the agency's own database. That is palpably arbitrary and capricious. Now Plaintiff asks this Court to view *the only* evidence on the voluntariness of Plaintiff's receipt of military pay. Defendant asks the Court to ignore it, relying upon the *absence* of this evidence to sustain the ABCMR. That is the functional equivalent of a shell game.

Plaintiff continued his reservation of rights within the four corners of the RFGOS document, (AR 224): "Because of my unique circumstance, I have been advised by counsel to include in this document that I have not voluntarily submitted to jurisdiction over me by the United States Army." Plaintiff signed the document in his civilian capacity, a fact deemed significant by Defendant's lawyers. (AR 2798-2801 -- the "Fiore Memo"). They interpreted the RFGOS as an effective reservation of rights, (AR 2798-2801-- the "Fiore Memo"), and Plaintiff

2

was made aware of that interpretation. Plaintiff operated in good faith -- everyone understood his RFGOS was worded sufficiently to reserve his right to litigate the validity of discharge #1 later. Based solely on the RFGOS, no reasonable juror could find that Plaintiff's action constituted a course of conduct which led the Army to believe Plaintiff abandoned any of his claims, constitutional or non-constitutional.

But the Army maintains Plaintiff waived his right to assert lack of *in personam* and subject matter jurisdiction [1] by *accepting* military pay and allowances and by performing military duties between discharges #1 and #2. Defendant highlights Plaintiff's military pay to bolster its lack-of-standing argument, an argument first predicated upon the RFGOS. Hence, Defendant itself made Plaintiff's *acceptance* of military pay relevant to this case.

Plaintiff demonstrated, in these 15 finance-related pages, a pattern of adding reservation of rights language into every pay-related document. (Compl. ¶ 82). There was no need for Plaintiff to submit these 15 pages to the ABCMR because, as explained, waiver was not an issue. Moreover, those government-generated forms were within the Army's possession and control. The Army accepted and acted upon these documents at the time they were submitted -- without objection. For example, (AR 2903), shows the Army's deliberation over the reservation:

> I have been ordered to active duty involuntarily. In my active duty capacity, I have accepted certain benefits, but only because I am involuntarily providing services to the United States Army for which compensation and benefits are appropriate. Execution of this document, therefore, does not constitute submission by me to the personal jurisdiction of the United States Army.

To which the Army responded on the form:

> Documents received. Input pending discussion with Major Weeks, DMPO Chief. /s/ [ ] Military Pay Supervisor

---

[1] In military law, *in personam* and subject matter jurisdiction are the same. *See* discussion, Pl.'s Mem. P. & A. Opp. Def.'s Mot. Summ. J. at § VIII (C).

Even in *Rooney v. Secretary of Army*, a case Defendant cites for other purposes but avoids on this very same point, concluded:

> Emphasizing Plaintiff's acceptance of military pay and allowances, the Army contends Plaintiff divested this Court of jurisdiction over his declaratory judgment action by reasserting his connection to the Army and thus mooting his challenge to the revocation of his discharge … There are ample reasons for respecting Rooney's reservation of rights. … The Army cannot dispute that Plaintiff's annotation to the forms he signed was timely or that the notation fairly informed the Army of his position … The Army accepted Rooney's annotated application without objection … Surely the Army would have objected had Rooney disobeyed this Court's order and failed to report for active duty. It cannot now use his compliance to foreclose judicial review of the underlying controversy in this case -- a controversy that remains present and live because of Rooney's continued personal interest in a resolution of his military status.

293 F. Supp.2d 111, 122 (D.D.C. 2003) (citations omitted).

In pointing to Plaintiff's military pay and performance of duties, Defendant essentially argues that Plaintiff's mere presence implies his consent to jurisdiction. But due process demands that presence imply consent only if it is voluntary. For example, a party is permitted to make a special appearance rather than a general appearance. *See, generally, Shaffer v. Heitner*, 433 U.S. 186 (1977) (Delaware statute violated due process clause where it refused to allow for special appearance). The distinction between a general appearance and special appearance is established in this Circuit. *In re Lambert*, 203 F.2d 607 (D.C. Cir. 1953); *Cooper v. Burton*, 127 F.2d 741 (D.C. Cir. 1942); *Schlaefer v. Schlaefer*, 112 F.2d 177 (D.C. Cir. 1940).

Many states have statutes that forbid service of process on a person who is in the state involuntarily, as by force, by subpoena, or by fraudulent inducement. *See Burnham v. Superior Court of California*, 495 U.S. 604, 613 (1990) (discussing cases); *Margos v. Moroudas*, 40 A.2d 816 (Md. 1945) (discussing cases); *Wyman v. Newhouse*, 93 F.2d 313, 315 (2nd Cir. 1937), *cert. denied*, 303 U.S. 664 (1938) (declining to give full faith and credit to a default judgment

4

obtained after defendant was served after being unfairly lured into the state); *Sawyer v. LaFlamme*, 185 A.2d 466, 467 (Vt. 1962) ("a court will refuse to exercise its jurisdiction in favor of a party that has used unlawful means to obtain service"). Most courts likewise grant immunity from personal jurisdiction to nonresidents who are present in the state solely to take part in a judicial proceeding, or who are passing through the state on their way to a judicial proceeding elsewhere. Similarly, the Army cannot by force or trickery induce Plaintiff to consent to personal jurisdiction by compelling him to perform military duty and paying him for it. As Plaintiff's counsel made clear at the time:

> Enclosed is our client's cashier's check payable to the United States Treasurer in the amount of $1,427.44. This amount represents a mispayment by the U.S. Army to Mr. Schaefer. It was electronically transferred to his account on 2 Nov 01 … May I say bluntly and directly that this rather crass and unwarranted attempt to create facts by the U.S. Army serves the interest of no one.

(AR 2904 -- one of fifteen pages Plaintiff now seeks to admit). This evidence is relevant.

## II. THE COMPANY COMMANDER LETTER (2 PAGES)

Defendant asserts little more than *ad hominem* argument to oppose these 2 pages. Throughout the ABCMR's "Discussion and Conclusions," (AR 38-42), it did not make the findings Defendant now contends it did, such as, (a) that "[Plaintiff] knowingly misrepresented his ability to perform his duties,"[2] (b) that Plaintiff's intent was "to avoid fulfilling his service obligations,"[3] or (c) that "the Infantry commander was not Plaintiff's commander."[4] Offering various legal tests without providing any supporting authority, Defendant now surmises its own

---

[2] Def.'s Opp. Pl.'s Mot. Reconsideration Based Upon New Facts at 5.

[3] *Id.*

[4] *Id.*

5

conclusions and its own material facts.[5] Because Defendant makes points that fall *outside* the ABCMR decision, Plaintiff must now show the Court two pages that fell *outside* the record. Defendant responds that "unit notification letters and forms which show what the actual unit commander should have written for the disability proceedings are irrelevant." *Id.* at 3. But these two pages have a tendency to make the existence of a material fact more or less probable. Fed. R. Evid. 402. Defendant made these facts (and suppositions) material.

These two pages address the content of and circumstances surrounding the commander's MMRB letter. AR 2867 (the content) is nothing more than a Fort Benning installation regulatory format, which could have been cited without being made part of the record. AR 2868 (the circumstances) shows the MMRB was a product of the Fort Benning Command (see letterhead), shows no element of the Physical Disability Evaluation System (PDES) -- PEBLO, PEB, USAPDA -- was part of the MMRB process, shows the Fort Benning Command believed the local company commander was the appropriate commander for the purpose of the MMRB, and defeats Defendant's *mens rea* arguments. Because Defendant's MMRB-related representations rely upon the absence of these 2 pages, the Court should consider these 2 pages under Fed. R. Civ. P. 54(b).

                Respectfully submitted,

                __/s/ Gary R. Myers____
                Gary R. Myers (157115)
                78 Clark Mill Road
                Weare, New Hampshire 03281
                1-800-355-1095; FAX (603) 529-3009
                Attorney for Plaintiff

---

[5] Another of Defendant's errors in argument should be noted. Defendant points to the TRO litigation in this case as if that Court made findings of fact and conclusions of law on the issue of whether Plaintiff committed the offense of fraudulent separation. That Court never did, because that Court abstained. The procedural posture and standards of review for that case were different.